Kimbrough v. Hornsby.

R. B. KIMBROUGH *et al. v.* S. J. & W. F. HORNSBY *et al.*

(*Knoxville.*   September Term, 1904.)

1. **BILLS AND NOTES.** Bona fide purchaser of negotiable instruments is not affected by attachment bill as a lis pendens.

Statutes permitting attachment of debts and choses in action, whether due or not due, and declaring void any transfer of property mentioned in the bill or the attachment made after the filing of an attachment bill in the chancery court, cannot affect, as *lis pendens* the *bona fide* purchaser of a negotiable instrument for value, and before maturity in due course of trade.   (*Post, pp.* 611-613.)

Code cited and construed: Secs. 5260, 5267 (S.); secs. 4241, 4248 (M. & V.); secs. 3500, 3507 (T. & S. and 1858).

2. **SAME.** Same. Garnishment of negotiable note, not actually seized and levied on under attachment, will not warrant judgment against garnishee, when.

Where it was sought to attach a negotiable note which was not actually seized and levied upon as tangible property, it can only be reached by garnishment of the payer, and the suit becomes a garnishment proceeding for this purpose; but if the garnishee answered that the note was not in his possession and that he did not know who held the note which had not yet matured, judgment cannot be rendered against him, where such note is not delivered up and he is not completely exonerated or indemnified from all liability thereon.   (*Post, pp.* 613-615.)

Code cited and construed:   Secs. 5255, 5260 (S.); secs. 4236, 4241 (M. & V.); secs. 3495, 3500 (T. & S. and 1858).

Cases cited and approved:   Huff v. Mills, 7 Yer., 42; Turner v. Armstrong, 9 Yer., 412; Moore v. Green, 4 Hum., 299; Daniel v. Rawlings, 6 Hum., 403; Matheny v. Hughes, 10 Heis., 403.

Kimbrough v. Hornsby.

3. **SAME. Same. Same.** Statutes authorizing attachment, and declaring void transfers, have no extraterritorial effect to defeat bona fide purchaser.

Statutes authorizing attachment of choses in action, whether due or not due, and declaring inoperative and void any transfer, sale or assignment made after the suing out of an attachment describing the property, can have no extraterritorial effect, so as to defeat the right of a *bona fide* purchaser of a note in another State. (*Post, p.* 611, 615.)

Code cited and construed: Secs. 5260, 5267 (S.); secs. 4241, 4248 M. & V.); secs. 3500, 3507 (T. & S. and 1858).

FROM MEIGS.

Appeal from the Chancery Court of Meigs County.— T. M. McCONNELL, Chancellor.

J. C. LOCKE, for complainants.

J. W. LILLARD, for defendants.

R. C. M. CUNNINGHAM, for B. F. Hayes, intervenor.

MR. JUSTICE McALISTER delivered the opinion of the Court.

The question presented for our determination upon this record is in respect of the title to a promissory note, and more especially whether a *bona fide* purchaser of the note, for value, before maturity, will acquire a su-

Kimbrough v. Hornsby.

perior right to that of an attaching creditor of the original payee.

The contest is between one B. F. Hayes, who purchased the note from Crabtree, the original payee, and Kimbrough et al., who are attaching creditors of Crabtree.

Complainants, Kimbrough et al., on the 21st of October, 1901, filed their original attachment and injunction bill in the chancery court of Meigs county against S. J. & W. F. Hornsby and W. D. Crabtree, for the purpose of collecting an alleged indebtedness due from the said Crabtree.

It is alleged in the bill that Crabtree was a nonresident of the State, and that complainants are informed he was a resident of the State of Texas. It is further alleged that defendants S. J. & W. F. Hornsby were indebted to the defendant W. D. Crabtree in the sum of $200 by a promissory note dated August 24, 1901, and due twelve months after date, for the sum of $200. An attachment was prayed against the property and estate of the defendant W. D. Crabtree, and there was a specific prayer for the attachment of the note in question. An injunction was also asked to restrain the defendants Hornsby from paying the note, and the defendant Crabtree from transferring it. An injunction accordingly issued, and was executed by reading the same to S. J. & W. F. Hornsby on the 22d day of October, 1901. An attachment also issued on the 21st of October, 1901,

and was returned by the sheriff on the 22d of October, 1901, with the following indorsement, viz:

"Came to hand Oct. 22nd, 1901, and executed by making a search for the within described note, and it is not in my county to be found."

An amended return was made upon this attachment on May 2, 1904, which reads as follows:

"Came to hand Oct. 22, 1901, and executed by making search for the within described note, and same not being found, went to the residence of S. J. & W. F. Hornsby, reading the within attachment to both of them, and stating that I was seeking to attach the said note in their hands and reading the injunction to them and summoning them as commanded, and I make this as an amended return this May 2, 1904."

An order of publication was made on October 25, 1901, for W. D. Crabtree. On December 4, 1901, S. J. & W. F. Hornsby filed an answer in the case, in which they say that on or about August 24, 1901, as charged in the bill, they executed a note to W. D. Crabtree; that the note was due 12 months after date, but was not due at the time of the filing of complainants' bill, and is not now due. These defendants have no knowledge of said note since its execution, and do not know who has the same. They cannot state whether it is in the possession of said W. D. Crabtree or not. Defendants, further answering, state that said note is a negotiable paper, not now due, and they ask to be protected as garnishees in the attachment of said note, under section 5255 of Shan-

non's Code.  They further say they are advised and believe that complainants are not entitled to a judgment against them on said note unless the same is surrendered to them.  Defendants further admit that their codefendant, W. D. Crabtree, is a nonresident of the State. After publication a decree *pro confesso* was taken against defendant Crabtree.

On the 3d of November, 1902, B. F. Hayes appeared by counsel and obtained leave to file a petition in the case, setting up his rights to the note in question.

He alleges that he is a citizen and resident of the State of Texas, and is the owner and holder of the note, which he files, and which is the note now in controversy. It reads as follows, viz.:

"$200.00   Aug. 24, 1901.   Twelve months after date, we promise to pay to the order of W. D. Crabtree, two hundred dollars ($200.00) with interest at 6 per cent. per annum from Jan. 1, 1902, balance on land, value received.   W. F. Hornsby, S. J. Hornsby."

This note is indorsed on its back by the original payee W. D. Crabtree.

It is further averred in the petition that said Hayes is the owner of the note, having purchased it in due course of trade, long before its maturity, from the owner, then in the State of Texas, without any knowledge of the attachment and injunction and the bill filed in this case, and having paid full value therefor.  He prayed that he be allowed to collect said note in this proceeding.

113 Tenn—39

The original complainants, Kimbrough et al., filed an answer to this petition, in which they deny that Hayes was an innocent purchaser or *bona fide* holder of said note.

The court of chancery appeals finds that the only controverted question of fact arising on the record is whether or not the said Hayes was a *bona fide* purchaser of the said note, for value, in due course of trade; and in respect of that question that court finds there is little, if any, conflict in the evidence. It finds as follows:

"It is shown in the testimony of B. F. Hayes, as to which there is no contradiction, that he is a citizen and resident of the State of Texas; that he first met W. D. Crabtree on or about the last of October or the first of November, 1901, in Bonham, Texas, at which time he bought from Crabtree the $200 note in question, and paid therefor the sum of $193. He states that he was induced to do this by reason of a letter to Crabtree by one Ferguson, a personal friend of his, in which Ferguson stated that the note was *bona fide* and perfectly good. The note at this time, as will be seen, was not due. It is a negotiable paper, and Hayes states that he knew nothing of any attachment suit or of any claims or equities against the note. And the court of chancery appeals concludes that he was clearly an innocent purchaser and *bona fide* holder of the paper, bought in due course of trade, for value, and without any notice of equities or claims against it."

That court accordingly held that the title of Hayes

to the note in question was superior to that of the attaching creditor, Kimbrough.

Complainant Kimbrough appealed, and has assigned errors.

The position of learned counsel is that, under the statutes of the State and the facts found, complainant had fixed such a lien by the filing of the bill and levy of the attachment upon the note, which could not be over-reached or defeated by the subsequent transfer of the note by Crabtree to Hayes. The argument of counsel is mainly rested upon the following provisions of the Code:

Shannon's Code, section 5260, provides:

"Attachment may be levied upon any real or personal property of either a legal or equitable nature, debts or choses in action whether due or not due, in which the defendant has an interest."

Section 5267 provides:

"Any transfer, sale or assignment made after the filling of an attachment bill in chancery of the property mentioned in the bill or the attachment, as against the plaintiff, shall be inoperative and void."

It is insisted that, the note in controversy having been described in the bill and in the attachment, the transfer thereof by Crabtree to Hayes after the filing of the bill and the levy of the attachment was absolutely void.

If these sections of the Code are to be regarded as a statutory *lis pendens,* it is well settled that the *bona fide* purchaser of a negotiable instrument for value and be-

fore maturity, in due course of trade, is not affected thereby. The doctrine is thus stated by Mr. Daniel, in his work on Negotiable Instruments (volume 1, section 800a), as follows:

"The purchaser of a bill, note, or other negotiable instrument for value and before maturity is not, as a general rule, affected by any litigation which may then be pending, and in which the instrument is involved, nor will a decree or judgment, when rendered in such litigation, affect him; the doctrine of *lis pendens* having no application to negotiable instruments. But if the instrument were overdue at the time of transfer, it would then be subject to the issue of the suit, as it is then subject to all equitable defenses. . . . The better doctrine upon this subject is that the maker of a negotiable note contracts to pay the holder at maturity, whoever he may be, and that while it is current and negotiable, in the full sense of the term, the maker cannot be charged as garnishee of the payee at the suit of a creditor of the payee, and that therefore no judgment could be properly entered against the maker that would bind him to pay the amount of the note to another person than the holder for value before maturity, if such holder there be. This view is cogently supported by Drake in his work on Attachment, and by many adjudicated cases, and the opposing decisions have been justly and sharply criticised. The true principle and correct conclusion has been well stated by Drake to be that the maker of a negotiable note should not be charged as garnishee of the bill, unless it

be affirmatively shown that before the rendition of the judgment the note had become due, and was then still the property of the payee."

A large number of cases are cited by the author in support of the text. See, also, Drake on Attachments, sections 582-587, inclusive.

The same principle was announced by this court in *Matheny* v. *Franklin Hughes et al.,* 10 Heisk., 403, as follows:

"Before the enactment of the Code, it was held by this court that a negotiable note might be attached, but it was also held that the liability of a garnishee is conclusively settled by his answer. And if he answers that he does not know where the note is or who holds it, he does not admit indebtedness to the defendant, and cannot be charged, although at the date of the answer the note may be overdue, for it may have been assigned before it fell due. But when the garnishee answers that he was indebted at the time of the garnishment, and it appears that the note had not been assigned before it was dishonored for non-payment, he is liable." Citing *Huff* v. *Mills,* 7 Yerg., 42; *Turner* v. *Armstrong,* 9 Yerg., 412; *Moore* v. *Green,* 4 Humph., 299; *Daniel* v. *Rawlings,* 6 Humph., 403.

"While a note is current as negotiable paper, it is impossible for the maker to say whether at the time of the garnishment the note is still the property of the payee; but if the garnishee should know and answer that the payee, at the time of the garnishment, was the holder

of the note, it being not yet then due, no judgment should be rendered against him, because his obligation is not to pay to any particular person, but to the holder at maturity, whoever he may be. To hold that an attachment by garnishment prevents a subsequent *bona fide* indorsee from acquiring a good title to a note taken before maturity and in due course of trade would destroy its usefulness in commercial transactions."

The court in that case cites 1 Parsons on Notes & Bills, 26, to the effect that the doctrine of *lis pendens* has no application to negotiable instruments.

It is true that section 5260, Shannon's Code, provides that attachments may be levied upon debts or choses in action, whether due or not due, in which the defendant has an interest. It may be remarked that the note in controversy was not levied upon as tangible property by the attachment in this case, and, at most, it was only reached by the garnishment of the debtor; but under section 5255, Shannon's Code, it is expressly provided as follows:

"The garnishee shall not be made liable upon a debt due by negotiable or assignable paper, unless such paper is delivered and the garnishee completely exonerated or indemnified from all liability thereon, after he may have satisfied the judgment or decree."

As already seen, the garnishment debtors in this case answered that the note was not in their possession, and they had no knowledge of its whereabouts—whether it had been transferred, or was still the property of the

original payee. Moreover, it is distinctly shown that at the date of filing their answer the note had not matured, so that, under the plain provisions of the Code, regulating the liability of a garnishment debtor on a negotiable instrument not yet matured, no valid judgment or decree can be pronounced against him.     In *Hughes* v. *Powers,* 99 Tenn., 486, 42 S. W., 2, it was said by this court as follows:

"The garnishment was rightly discharged because the garnishee's acknowledged indebtedness was evidenced by negotiable notes which were not delivered, whose owner was not shown, and as to which no indemnity was given or offered to the garnishee.  To have entitled the complainants to a decree against the garnishee by reason of such outstanding notes, it was incumbent on them to deliver the notes themselves, or to give him complete indemnity." Citing Shannon's Code, section 5255; *Pickler* v. *Rainey,* 4 Heisk., 341; *Matheny* v. *Hughes,* 10 Heisk., 404.

Moreover, we are of opinion that sections 5260, 5267, Shannon's Code, authorizing the attachment of choses in action, whether due or not due, and declaring inoperative and void any transfer, sale, or assignment thereof after the levy of the attachment, can have no extraterritorial effect, so as to defeat the rights of a *bona fide* purchaser of a note in the State of Texas.

The result is the decree of the court of chancery appeals is correct, and is affirmed.