J. H. S. Morrison *v.* W. H. Buttram.*

(*Nashville,* December Term, 1926.)

Opinion filed, December 20, 1926.

1. **OFFICE. Election contest. Returns how far conclusive.**

The returns certified by election officers are conclusive of the result until overcome by some evidence indicating the inclusion of illegal ballots, or an illegal count of the ballots. (Post, p. 683.)

2. **SAME. Same. Circuit judge. Burden of proof.**

The affirmative is with the complainant to establish his claims to the office, by showing that contrary to the **prima-facie** case made out by the returns he and not the defendant was the choice of the greater number of legal voters. (Post, p. 684.)

Citing: Nelson v. Sneed, 112 Tenn., 36.

3. **SAME. Same. Same. Illegal votes.**

It makes no difference to complainant how many illegal votes were cast and counted, if none of them form an essential part of the total that makes up a majority certified by the election officers. (Post, p. 684.)

Citing: Red River Furnace Co. v. Tennessee Central Railway, 113 Tenn., 697.

4. **SAME. Same. Same. Apportionment of illegal votes.**

Upon the failure of the contestant to aver and prove a **prima-facie** case establishing his title to the office, he cannot assert the right to an arbitrary apportionment of the votes. (Post p. 685.)

Citing and explaining: Moore v. Sharp, 98 Tenn., 65-491.

Citing: Potter v. Robbins, December Term 1926.

5. **SAME. Same. Same. Official misconduct of candidate. Impeachment.**

Where it is averred that the occupant of the office of circuit judge, a candidate for re-election, gave, or promised to give, official

favor to influence and obtain votes, jurisdiction over the matter is conferred upon the legislature by article V, section 4, and article VI, section 6 of the State Constitution. (Post, p. 686.)

Citing: Constitution, art. 10, sec. 3.

6. SAME. Same. Same. Same. Power of judiciary.

While the judiciary cannot remove a judge, for official misconduct, from office, it may exercise in appropriate proceedings, jurisdiction to determine the due selection of one; and to declare the results in favor of one or the other candidates; or, under proper pleadings, declare the election void. (Post, p. 687.)

Citing: Shannon's Code, secs. 1320, 1322; Maloney v. Collier, 112 Tenn., 102.

7. SAME. Same. Disqualification and ineligibility.

Where the question of ineligibility has been raised and shown to exist, our cases hold that the Constitutional provision is operative to exclude the successful candidate, especially defaulters, from office. (Post, p. 687.)

Citing: Lewis v. Watkins, 3 Lea (71 Tenn.) 182; Day v. Sharp, 128 Tenn., 34; Hogan v. Hamilton Co., 132 Tenn., 554; Code, Shannon, 1069; Paine on Elections, sec. 176.

8. SAME. Same. Same. Construction, art. 10, sec. 3, of the Constitution.

The first paragraph of article 10, section 3 of the Constitution is given effect by statutes which prescribe the punishment for giving or taking bribes in violation of the election laws. The second paragraph, which is the provision that disqualifies candidates for giving or promising gratuities to be elected, requires no legislation to make it effective. If in a proper proceeding the violation of this provision is established, the court may enforce this mandate, because it defines the conduct which renders the candidate ineligible who obtains the office through the means denounced. (Post, p. 688.)

9. EQUITY PLEADING AND PRACTICE. Relation between bill and relief prayed.

When there is no relation between the purposes of the bill and the relief prayed under it, demurrer will lie.  (Post, p. 688.)

---

*Headnotes 1. Elections, 20 C. J., section 292; 2. Elections, 20 C. J., section 322; 3. Elections, 20 C. J., section 322; 4. Elections, 20 C. J., section 295; 5. Elections, 20 C. J., section 276 (Anno.); 6. Elections, 20 C. J., section 317 (Anno.); 7. Elections, 30 C. J., section 275 (Anno.); 8. Constitutional Law, 12 C. J., section 384; 9. Elections, 20 C. J., section 269; 10. Constitutional Law, 12 C. J., section 398; Judges, 33 C. J., section 13; 11. Elections, 20 C. J., section 275; 12. Judges, 33 C. J., section 25; 13. Constitutional Law, 12 C. J., sections 106, 125; 14. Elections, 20 C. J., section 373.

---

## FROM ANDERSON

---

Appeal from the Chancery Court of Anderson County. —Hon. J. H. Wallace, Chancellor.

H. M. Carr, John W. Green, John Jennings, Jr., Chas. H. Davis, and W. A. Garrett, for complainant J. H. S. Morrison.

H. B. Lindsey, L. H. Carlock, and Fowler & Fowler, for defendants.

Mr. Justice Cook delivered the opinion of the Court.

The bill was filed to contest the election of the defendant to the office of Judge of the Nineteenth Judicial Circuit, and in the alternative to have him declared ineligible to hold the office. It shows that on the face of the returns from all the counties of the circuit, complainant received 7,229 votes and defendant 7,575 votes. Then follows the statement that:

"While there were many irregularities in some of the voting places and irregularities in some precincts of such flagrant character, as petitioner believes and avers rendered the election in said precincts absolutely void, yet as the same, of themselves alone, are not determinative of the validity of the election as a whole, petitioner admits the validity of the election, but attacks the same on the grounds hereinafter specifically set out."

The attack upon the result is confined to five precincts of Scott county, four precincts of Fentress county, three precincts of Anderson county, and three precincts of Claiborne county. At these voting places complainant received on the face of the returns 645 votes, and defendant, 1,571 votes, and complainant charges that of this total 2,216 votes, 1,271 of them were cast by persons liable to the payment of poll tax, and who voted without paying the tax as required by law. It is charged that the returns from the precincts mentioned should be purged of the illegal votes, that is votes alleged to have been cast by persons named in the bill as having voted without payment of the tax, and complainant insists that when the returns are purged of these votes the result will be a majority in the circuit sufficient to elect him to the office.

The bill contains no allegation or statement showing for whom the alleged illegal votes were cast, and there is no suggestion in the bill that the illegal votes, or the greater number of them, were cast and counted for the defendant. Neither does the bill charge that it cannot be shown by direct or circumstantial evidence for whom the illegal votes were cast. Complainant rests his claim to the office upon the allegation that the persons named in

the bill were subject to payment of a poll tax, as a qualification to voting, and that they voted at the precincts mentioned without paying the tax, hence voted illegally, wherefore the returns in those precincts shoud be purged to the extent of such illegal votes, and deducted, under the rule indicated in *Moore* v. *Sharp,* 98 Tenn., 65-491 from the vote of each candidate in the proportion that the total vote bears to the vote of each at the precinct where the illegal ballots were received.

This proposition ignores the rule that returns certified by the election officers are conclusive of the result until overcome by evidence indicating the inclusion of illegal ballots, or an illegal count of the ballots. The affirmative is with the complainant. He is the moving party and the burden is upon him to establish his claim to the office by showing that contrary to the *prima-facie* case made out by the returns, he and not the defendant was the choice of the greater number of legal voters. The bill must state a cause of action against the defendant, and show a right of action in the complainant. *Nelson* v. *Sneed,* 112 Tenn., 36. This requirement is met in election contests only by a showing that the complainant, and not the defendant received a majority of the legal votes cast. It makes no difference to complainant how many illegal votes were cast and counted, if none of them form an essential part of the total that makes up a majority certified by the election officers. *Red River Furnace Co.* v. *Tennessee Central Railway,* 113 Tenn. 607.

The bill ignores the possibility that 645 of the 1,271 illegal votes could have been cast for complainant and only 626 of them for defendant, still leaving the defendant a clear majority of the legal votes.

In *Potter* v. *Robbins,* decided December 11th, Mr. Justice SWIGGART, speaking for the court, said:

"The rule that illegal votes cast in a given election precinct may be apportioned between the candidates according to the total vote received by each candidate in the particular precinct, when it does not appear from the evidence for whom the illegal votes were actually cast, was applied in *Moore* v. *Sharp,* because the circuit judge stated in the record that counsel on both sides agreed that it should be applied. Furthermore, the opinion of this court in that case states that 'On the trial below it was developed that illegal votes were polled, but it was impossible to ascertain for whom they were cast.' It appears, therefore, that counsel agreed to the application of the rule of apportionment only after it was developed that it was impossible to ascertain for whom the illegal votes were cast."

After reviewing the authorities, the opinion reads:

"In testing the sufficiency of the petition in the present cause, as showing *prima facie* a state of facts, which, if true, would entitle the petitioner to the office for which he was a candidate, we are unable to apply the rule of apportionment of the illegal voters, in the absence of any averment that the petitioner was informed and believed that the illegal votes specified, or a sufficient number of them to change the result, were cast for the defendant, or any averment that, after the exercise of diligence, petitioner had been unable to discover, and was, therefore, unable to aver for whom the illegal votes were cast."

The burden rested upon complainant to aver and prove a *prima-facie* case establishing his title to the office.

Furnace Co. v. Railroad Co., supra. Having failed to assume this burden in his pleading, he cannot assert the right to an arbitrary apportionment of the votes, and having expressly admitted that the election was valid, he cannot assert title to the office.

Other questions presented arise under the alternative prayer of the bill as follows:

"That in the event the petitioner is mistaken as to the relief which he is entitled to upon the illegal votes herein alleged to have been cast in said election and that Your Honor should fail to purge said illegal votes and declare your petitioner to have been elected judge of said circuit, that your Honor find and hold that the defendant has committed such acts in violation of section 3 of article X of the Constitution of this State as renders him ineligible and incapable for six years to serve in the office of circuit judge of said circuit, and that Your Honor so decree."

Article 10, section 3, reads:

"Any elector who shall receive any gift or reward for his vote, in meat, drink, money or otherwise, shall suffer such punishment as the laws shall direct. And any person who shall directly or indirectly give, promise or bestow any such reward to be elected, shall thereby be rendered incapable, for six years, to serve in the office for which he was elected, and be subject to such further punishment as the legislature shall direct."

For the most part it is not charged that the defendant bestowed any of the substantial or concrete things mentioned in this section of the Constitution, but that as the occupant of the office of circuit judge, and while a candidate for re-election, he gave or promised to give official

favor to influence and obtain votes. Many of these charges relate to official misconduct over which jurisdiction is conferred upon the legislature by article 5, section 4, and article 6, section 6, of the Constitution.

While the Judicial Department cannot remove a judge from office for official misconduct, it may through appropriate proceedings determine the right of claimants to a judicial office. Such an inquiry is not political but judicial, and the Judicial Department may exercise jurisdiction to determine the due selection of a judge and declare the result in favor of one or the other candidates, or under proper pleadings declare the election void. Shannon's Code, sections 1320, 1332.

An exercise of this power is quite distinct from the power of removing judges for misconduct in office confined exclusively to the legislative department. Under Shannon's Code, section 1332, if an ineligible candidate is given a majority of the votes, the next highest candidate is not entitled to the office. But, as stated in *Maloney* v. *Collier*, 112 Tenn., 102, a contestant for the office may by proper pleading and proof have the election annulled with a view of another contest before the people. In that case the court said that in every election contest, under the Code two distinct grounds of action may be alleged. First, that the election is void; or, second, if valid that the contestant received a majority and is entitled to the office after purging the polls of the illegal ballots.

In addition to the charges involving official misconduct and the promise of official favor to obtain votes, it is charged in the bill that the defendant promised the stockholders and directors of the Baird Dry Goods Company,

as a means of obtaining their votes and influence that he would, if elected, pay the company a debt of $450 owing by his son. Such a transaction if engaged in and established by proof would be contrary to article 10, section 3 of the Constitution. The Chancellor overruled the grounds of demurrer directed to this charge in the bill.

It is insisted on behalf of the defendant that the Chancellor should have sustained the grounds of demurrer directed to that charge because the provision of the Constitution is not self executing. In Paine on Elections, section 176, it is said that such provisions are self executing. Beyond the provision of section 1069, of Shannon's Code, there is no statute declaring defaulters and dualists disqualified and ineligible to office, but where the question of ineligibility has been raised and shown to exist, our cases hold that the constitutional provision is operative to exclude them, especially defaulters from office. *Lewis* v. *Watkins,* 3 Lea, 182; *Day* v. *Sharp,* 128 Tenn., 34; *Hogan* v. *Hamilton Co.,* 132 Tenn., 554.

The first paragraph of article 10, section 3, is given effect by statutes which prescribe the punishment for giving or taking bribes in violation of the election laws. The second paragraph, which is the provision that disqualifies candidates who give, promise or bestow meat, drink, money or otherwise to be elected, requires no legislation to make it effective. If in a proper proceeding the violation of this provision is established, the courts may enforce the mandate of article 10, section 3, because it defines the conduct which renders the officer ineligible who obtains the office through the means denounced.

The power of the court under section 1332 of Shannon's Code is limited to an annulment of the election. The

complainant does not charge in the bill that the election is void, and he does not seek to annul the election, but in the alternative prayer for relief he asked the court to render a decree declaring the defendant ineligible and excluding him from the office.

There is no relation between the purposes of the bill and the relief prayed under it. The bill seeks to purge the polls of illegal ballots and in the alternative to have a decree excluding the defendant from the office, not a decree declaring the election void. Only this latter relief could be granted under the alternative prayer, and the prayer seeking to remove or exclude the defendant from office is beyond the purposes of the bill, and beyond the authority conferred upon the court by section 1332 of Shannon's Code.

It follows, therefore, that all the grounds of demurrer should have been sustained and the bill dismissed.