Shutt *v.* Blount.

(*Jackson,* April Term, 1952.)

Opinion filed June 7, 1952.

P. M. HARBERT, of Savannah, and R. R. HAGGARD, of Waynesboro, for plaintiff in error.

W. W. LACKEY, of Savannah, and W. H. LASSITER, of Huntingdon, for defendant in error.

Mr. Justice Gailor delivered the opinion of the Court.

This appeal presents an election contest rising from the General Election held on August 4, 1950. In this suit the only office involved is that of County Court Clerk for Hardin County, and in that race, by the official canvass of the returns of the election made by the County Election Commissioners, the contestee, Harold Blount, received 1899 votes, and the contestant, Joe F. Shutt, ceived 1890 votes. The contestee was given his certificate of election and duly inducted into the office of County Court Clerk.

This contest was filed in the County Court, and there, the County Judge, who had himself been a candidate in the election, found himself disqualified, and transferred the lawsuit to the Circuit Court.

The bill was filed in dual aspect, seeking alternative relief, either (1) to have the polls purged and the contestant declared elected, or (2) in the alternative, to have the election declared void on account of illegality of votes cast and irregularities of the returns made. The contestee demurred on several grounds, but we need consider only the second, which was specific and directed "to that portion of the bill filed in the alternative, as seeking to have the Court adjudge the Appellant elected to the office of County Court Clerk, because there was no allegation in the petition of a valid, legal election." The bill, with no reservation, alleged that said election was illegal, fraudulent and void, and because the appellant could not seek to hold office under an illegal, fraudulent and void election, "the contestee demurred to the bill," and the Trial Judge sustained that ground of the demurrer.

By answer, the contestee joined issue on the other aspect of the bill, and denied that there was such irregularity, illegality and fraud in voting, as warranted a declaration that the election was void.

Upon this issue the case was tried in the Circuit Court, but the contestant was not limited in any way in introducing all evidence available to him of the irregularities and illegalities in the voting and the impropriety of returns made by the officers of election.

After the Trial Judge heard all the evidence introduced by both sides, he took the case under advisement, and incorporated an opinion and finding of facts in his judgment, decided the case for the contestee. After making motion for new trial, the contestant has perfected this appeal.

■ Error is assigned on the action of the Trial Judge in sustaining a part of the demurrer and limiting the triable issue to the question whether the election was void. Since it appears that if the testimony of contestant's witnesses be accepted, that in spite of the miscounting that the contestee would nevertheless have been elected, by a majority of seven instead of nine votes, and since it appears that the contestant was in no way limited in putting on all proof available to him, clearly the action of the Trial Judge in sustaining one ground of the demurrer, resulted in no prejudice to the contestant, and this he, himself, realizes since he says in his brief, at page 72:

"The demurrer to that portion of contestant's petition wherein he sought to have himself declared elected having been sustained and the case having gone to an issue on the question of the validity or invalidity of the election, we, frankly, see no value now

in assigning errors as to the action of the Circuit Judge in ruling upon the demurrer, * * *."

For the reasons stated, these assignments of error are overruled.

While it is true that under the authority of *Maloney* v. *Collier,* 112 Tenn. 78, 83 S. W. 667, a bill such as the present may be filed in dual aspect, and seek relief in the alternative, yet it is apparent from the following statement of the opinion, that at some stage an election of relief must be made:

"It seems to follow from the authorities cited, and as, in substance, is especially held in *Lewis* v. *Watkins,* ([71 Tenn. 174] 3 Lea 174) supra, that in every contested election case under the Code two distinct grounds of action may be alleged, namely, first, that the election is void, and, secondly, if valid, that the contestant is entitled to the office on the ground that, after a purging of the polls, it will appear that he has received the majority of the votes cast at such election. It likewise follows that one of the grounds may be properly stated on the face of the petition and the other improperly or not sufficiently stated, and that one may be stricken out on demurrer for insufficiency and the other retained as being stated with sufficient fullness and accuracy to meet the objections raised by demurrer. It also follows that both may be stated on the face of the petition with sufficient fullness and accuracy to resist the assaults of a demurrer, and that the parties may go to proof, and one be sustained and the other rejected on the evidence." (112 Tenn. at pages 102-103, 83 S. W. at page 673.)

This is a clear recognition that the relief in the alternative is inconsistent and contradictory, and there

must be at some stage, an election whether there will be a judgment that the election is void, or whether the polls will be purged of illegal votes, and the contestant declared elected, since only in a legal election can one be elected to public office. In the present case, because the Trial Judge concluded that there had been no sufficient allegation of a legal election, and that there had been an unconditional allegation that the election as held, was void, the election of remedies which would have been made at some stage in any event, was imposed on the contestant when the second ground of the demurrer was sustained.

It remains to consider whether, on all the evidence presented, the Trial Judge was warranted in declaring that the election of County Court Clerk in Hardin County, was not void on account of illegal voting and irregularity in the returns. Since many other candidates and officers were involved in the General Election of August 4, 1950, the Court would only be justified in declaring the election for Clerk void, if the evidence was clear and definite that the illegality and irregularity of which complaint was made, affected the race for County Court Clerk. The mere showing that unqualified persons voted (those not registered when the law required them to be registered, and those who had not paid their poll tax when they were liable therefore) would only be relevant on the issue if it was shown not only that unqualified voters voted, but that they voted in the Clerk's race. While we recognize that such evidence would be difficult to obtain, it is nevertheless true that there is no such evidence in the record before us.

From the poll lists and tally sheets filed, it does not appear that public interest was centered in the Clerk's race rather than on the other contests for county office.

The number of votes cast for the other county officers were about the same as those cast in the Clerk's race. While the result of the Clerk's race was close, the result of other races was also close, for example, in the race for County Judge.

In the Trial Court, the evidence centered upon the returns from three of the twenty-seven precincts in the county. These were: Morris Chapel, where on the official count, Blount received 123 votes, and Shutt 90 votes; Olivet, where on the official count, Blount received 28 votes, and Shutt 23 votes, and Saltillo, where on the official count, Blount received 122 votes, and Shutt 143 votes. After hearing all the evidence, the Trial Judge found as to these three boxes:

"Now, with reference to the three voting precincts in question—Olivet, Morris Chapel and Saltillo. In the first place, the ballots were preserved and a count of the ballots in these three voting precincts in open Court showed only a variation of two votes from the returns certified by the Election Commission. However, if we eliminated the entire vote at all three of these precincts, Blount would still have a majority of the votes cast in the election.

"The Court was concerned over the fact that the handwriting on the tally sheets in these three boxes obviously had been changed. Let's deal first with the Saltillo box. Mrs. Lucy White, one of the clerks, testified she kept an independent record and that this record showed that seven extra votes had been added to the contestee. Mrs. Bingham, the other clerk, testified that Blount actually received 119 votes rather than 122 at Saltillo and that Shutt's vote was actually 143 as recorded.

"Miss Young, a clerk at Olivet, did not remember the vote. Miss McKnight, the other clerk at Olivet, testified that she did not remember the actual vote, but that it looked to her like there were some erasures from Blount's name.

"Mrs. Orr, the clerk at Morris Chapel box, stated that she kept an independent record of the vote, which checks with the vote shown on the tally sheet. Mrs. Rinks, the other clerk at Morris Chapel, did not remember the vote.

"Making allowances for the adjustments at the Saltillo box, Blount still would be elected. For these reasons the Court is holding that the election should not be declared invalid."

From the summation of the evidence by the Judge as it appears in the foregoing quotation from his final judgment, it is apparent that the testimony of the various clerks was vague, confused and conflicting. We find no evidence overlooked, or justifying our disturbing the judgment of the Trial Judge.

 Error is assigned because the Trial Judge predicated his holding on the fact that by the recount, the result of the election had not been changed, and that Blount, in spite of such recount, was nevertheless, elected on the face of the recounted returns. This aspect of the case had been eliminated by the Judge when he sustained the demurrer. However, if the Trial Judge reached the right result for the wrong reason, there is no reversible error. *Southern Ry. Co.* v. *City of Elizabethton,* 10 Tenn. App., 119, 132; *Sheafer* v. *Mitchell,* 109 Tenn. 181, 71 S. W. 86; *Chambers* v. *Chambers,* 92 Tenn. 707, 714, 23 S. W. 67; *Little Rock & M. Railway Co.* v. *Wilson,* 90 Tenn. 271, 16 S. W. 613, 13 L. R. A. 364; *Brooks* v. *George H. Friend Paper Co.,* 94 Tenn. 701,

705, 31 S. W. 160. We think the finding of the Trial Judge was entirely correct, but incomplete. The question before him was whether or not such irregularity, fraud and illegality had been shown as justified him in declaring the election for County Court Clerk void. If, after hearing all the evidence, it nevertheless appeared that there had been a valid expression of the people's will, and that Blount had been elected, declaration that the election was void, was unwarranted. *Jared* v. *Fitzgerald*, 183 Tenn. 682, 195 S. W. (2d) 1. Furthermore, since competent and relevant evidence of irregularity was confined to three boxes of the twenty-seven boxes in the county, the fact that those three boxes might be eliminated without changing the result, was also pertinent to the question whether there had been a valid expression of popular will. This Court has many times sanctioned the elimination of precincts where irregularities have been shown to have occurred, and validating the election as it resulted in the unimpeached boxes which remained. Cf. *Morrison* v. *Buttram,* 154 Tenn. 679, 290 S. W. 399.

▉ As we understand the rule, an election will be declared void by the Courts, only where fraud and irregularity are so gross that the conclusion is inescapable that the election does not express the will of the qualified voters. We find no such evidence of general and gross fraud and irregularity in the record before us. Indeed, when the contestant put on his proof, which he was permitted to do without limitation or restriction, definite evidence of probative force was confined to three of the twenty-seven precincts of the county. And as only approximately 529 of the total of approximately 3650 votes cast for County Court Clerk, were cast in those three precincts and as on the recount before the Court, only two votes were changed in those three precincts, it is mani-

ifest to us that the evidence did not support the charge that fraud and irregularity were so gross and general that the election should be declared void, as not being a valid expression of popular will.

Accordingly, all assignments of error are overruled. and the judgment is affirmed.

PREWITT, J., not participating.