**STATE of Tennessee ex rel. Mary Mize ANDERSON, Plaintiff-Appellant,**

v.

**Richard H. FULTON, and Thomas H. Shriver, District Attorney General for the Tenth Judicial Circuit, Davidson County, Tennessee, Defendants-Appellees.**

Supreme Court of Tennessee,
at Nashville.

May 19, 1986.

Rehearing Denied June 16, 1986.

Fyke Farmer, Nashville, for plaintiff-appellant.

William F. Howard, James L. Murphy, III, Metropolitan Attys., Nashville, for defendants-appellees.

OPINION

FONES, Justice.

Mary Mize Anderson, a citizen and taxpayer of Nashville, Davidson County, and an unsuccessful candidate for Mayor of that consolidated city and county government, in the election of August 4, 1983, brought this *quo warranto* action, seeking to remove Mayor Richard H. Fulton from office. In her complaint she alleges that Fulton was guilty of bribing the electorate for votes by, (a) giving away butter and cheese belonging to the U.S. Department of Agriculture; (b) giving a bean supper at the Labor Temple; and (c) giving free barbecue and watermelon feasts in the last days of the campaign. She alleged that she had requested that the District Attorney General for the Tenth Judicial Circuit, Thomas H. Shriver, bring the action but he had declined to do so and she named him as a party defendant.

Defendants filed a motion to dismiss on the ground that the Attorney General had declined to bring or to authorize Mary Anderson to bring this *quo warranto* action. With that posture of the pleadings, the trial judge determined that an *in limine* hearing was required to adjudicate the issue of whether the District Attorney General had acted arbitrarily or capriciously or was guilty of palpable abuse of his discretion in declining to bring and declining to authorize the bringing of this action. In *Bennett v. Stutts*, 521 S.W.2d 575 (Tenn.1975), this Court mandated that procedure in such circumstances. The trial judge expressly found that the District Attorney General had not acted arbitrarily or capriciously and was not guilty of palpable abuse of his discretion in this instance; that Mary Anderson lacked standing to bring the action, and dismissed same.

The hearing was held on July 31, 1985, and the only witness called to testify was Thomas H. Shriver. He identified for inclusion in the record, as exhibits, the correspondence he received from Mary Anderson and her attorney requesting that he bring this action, and his responses thereto. After the correspondence was identified, the following occurred:

Q. Now, sir, would you explain to the Court why in your discretion, on your determination, you refused to allow this quo warranto to be brought by you or to allow Mrs. Anderson to bring it in the name of the State, sir?

MR. FARMER: If Your Honor please, I think he has already given the reasons in that letter.

MR. HOWARD: Okay.

Q. Are those reasons—

MR. FARMER: I guess he could elaborate if he wants to, but—

Q. I don't see any need to do it if Mr. Farmer will accept that. Are the reasons stated therein?

A. Yes, sir.

Q. Have you changed your mind at all on that?

A. No, sir.

MR. HOWARD: You may cross examine.

[The letters were marked by the reporter, with identification comments by the lawyers and the proceedings then continued as follows:]

THE COURT: You may cross examine, Mr. Farmer.

MR. FARMER: I don't think I care to cross examine him in public like this.

THE COURT: You don't have to.

MR. FARMER: His position is stated in that letter, the reasons, and my reply was given to that, and I think it would just be taking up time to elaborate on it.

THE COURT: You may step down then.

On April 30, 1985, Mary Anderson wrote General Shriver, "RE: BRIBERY IN 1983

MAYORALTY ELECTION." The first paragraph was as follows:

By Article 10, section 3 of the Tennessee Constitution it is provided:

Section 3. Any elector who shall receive any gift or reward for his vote, in meat, drink, money or otherwise, shall suffer such punishment as the law shall direct. And any person who shall directly or indirectly give, promise or bestow any such reward to be elected, shall thereby be rendered incapable, for six years, to serve in the office for which he was elected, and be subject to such further punishment as the Legislature shall direct.

She asserted that Mayor Richard Fulton had breached the quoted constitutional provision, that he had also violated T.C.A. § 2–19–126, and that the "material and controlling facts of the matter" were as follows:

*First, the butter and cheese "give away".*

Attached hereto is a memorandum prepared by my attorney Fyke Farmer setting forth the facts and law regarding this violation.

*Secondly, the April 1983 bean supper at the Labor Temple organized by the Mayor's Re-election Committee.* UPDATE '83, the announcement issue of Mayor Fulton's campaign attached.

*Thirdly, the free barbecue and watermelon feasts in the last days of the campaign.* Copy of newspaper article in the Nashville Tennesseean attached.

She then stated that she was advised that it was his duty to file a *quo warranto* suit to remove Fulton from office and that it was his duty to present to the Grand Jury the facts of Fulton's violation of T.C.A. § 2–19–126. She listed the names and positions of six persons that she asserted could "testify to the facts."

The memorandum by Ms. Anderson's attorney relates details about President Reagan's announcement that thirty million pounds of processed cheese would be made available for distribution to needy people, about Governor Alexander's announcement

designating the agencies that would be involved in the distribution, and other details. It was alleged that on February 7, 1983, defendant Fulton wrote to a federal official in Atlanta making application for an allocation of butter and cheese for distribution to low income groups and that the Metropolitan Development and Housing Agency (MDHA) be designated as the food bank; that the MDHA had been operating since 1933 and had storage facilities for one hundred and five tons of cheese; that the application sought butter and cheese to distribute over the ensuing six month period. It was related that on February 14, 1983, the food and nutrition service approved the MDHA as a food bank, and made available to that agency specific quantities of butter and cheese in the months of February through July, 1983, approximating two hundred and thirty thousand pounds of butter and two hundred and twenty-three thousand pounds of cheese per month.

The allegations of wrongdoing or impropriety asserted in the attorney's memorandum were that: (1) MDHA was not a food bank; (2) Mayor Fulton was not an officer or director of MDHA and had no authority to act for it; (3) that fliers were printed and distributed and media releases issued, and the fliers stated that the distribution was sponsored by Mayor Fulton; (4) Mayor Fulton represented in his application that the MDHA would distribute to ten thousand, nine hundred and fifty low income families, but that the quantity received would be sufficient to serve forty-five thousand families; (5) that Mayor Fulton's solicitation of a six month supply of butter and cheese "warrants the inference that the scheme was designated to be used to further his particular interests which would terminate with the election on August 4"; (6) that Mayor Fulton violated federal regulations prohibiting the use of the butter and cheese to further individual political interests, and implicitly, it follows that that violation was also a violation of Article X, section 3, Constitution of Tennessee.

The campaign material enclosed with Ms. Anderson's letter consisted of fliers advising of forthcoming watermelon and barbecue feasts, inviting friends and family to come and "eat all you want", sponsored by friends of Fulton. The newspaper article reported that three days before the election, Mayor Fulton attended his "traditional watermelon feast."

The District Attorney General's reasons for declining to bring the action were expressed in a letter to Mary Anderson dated May 17, 1985. The relevant portion of the letter reads as follows:

> [I] cannot agree that the framers of our State constitution or of the code section referred to intended to prohibit the acts about which you complain. Indeed voters have been induced to attend political rallies by the offer of food and drink since the very inception of our democracy. Barbecues, bean suppers, and watermelon feasts have been used by every candidate for a significant office for more than two hundred years. Thus every office holder in the State would be subject to prosecution under your interpretation of that statute. Mr. Farmer has suggested that the distribution of butter and cheese, close to election time, "warrants the inference that the scheme was designed to be used to further his political interests." While that may be true, guilt of a criminal offense must be proved beyond a reasonable doubt. Mere inferences will not suffice.

In a later paragraph the District Attorney General advised Ms. Anderson of the procedure prescribed in T.C.A. § 40–12–104 by which any person may submit evidence to the Grand Jury of the commission of an offense without participation by the District Attorney General, and of T.C.A. § 8–7–106 relating to the appointment of a District Attorney pro tem.

On May 24, 1985, Ms. Anderson's attorney wrote to General Shriver taking issue with the reasons given for declining to bring the *quo warranto* action and to prosecute for the alleged statutory violation. No additional facts were submitted.

In *Morrison v. Buttram*, 154 Tenn. 679, 290 S.W. 399 (1926), the court noted that the second sentence of Article X, section 3, disqualifying candidates who give meat, drink, money or otherwise for a vote to be elected, required no legislation to make it effective, whereas the first sentence proscribing the receiving of such a bribe required legislative implementation. By chapter 740, Public Acts of 1972, the Legislature implemented both prongs of Article X, section 3, codified as T.C.A. § 2–19–126 and § 2–19–127, and provided the punishment for both the voter and the candidate in T.C.A. § 2–19–128. In essence, T.C.A. § 2–19–126 is an elaborate expression of the same prohibition as that contained in the second sentence of Article X, section 3.

██ A *quo warranto* proceeding is not maintainable at the instance of a private citizen. *Bennett v. Stutts, supra.* However, if the District Attorney General "should act arbitrarily or capriciously or should be guilty of a palpable abuse of his discretion in declining to bring such action or in authorizing its institution, the Courts will take jurisdiction upon relation of a private citizen, in the name of the State of Tennessee." 521 S.W.2d at 577. The burden of proof is on the party having the affirmative of an issue and this burden never shifts. *See, e.g., Freeman v. Felts,* 208 Tenn. 201, 344 S.W.2d 550 (1961). The burden of proving that the District Attorney General acted arbitrarily or capriciously or was guilty of palpable abuse in declining to proceed is upon the private citizen who seeks to rectify the alleged public wrong without approval of the District Attorney General.

██ The prohibition of the Constitution and the statute involved here is directed to the giving or promising of rewards such as meat, drink, money or things of value for a vote to be elected to public office. Ms. Anderson and her attorney did not provide the District Attorney General with a single instance wherein it was factually asserted that Mayor Fulton had given anything of value in exchange for a promise to vote for

him in the Mayoral election. Implicit in the District Attorney General's letter of May 17 was the observation that the serving of food at a traditional political rally promoting a candidate for election to public office, to which the general public is invited, lacks the essential element of bribery, to-wit: that a voter is given food in exchange for his vote, which element was also not present in the distribution of butter and cheese.

On this record the trial judge correctly found that the District Attorney General did not act arbitrarily or capriciously and was not guilty of palpable abuse of discretion in declining to bring the *quo warranto* proceeding.

The judgment of the Chancery Court of Davidson County is affirmed. Costs are adjudged against appellant.

BROCK, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.

OPINION ON PETITION TO REHEAR

A petition to rehear has been filed on behalf of the relator Anderson, considered by the Court, found to be without merit, and is respectfully denied.