# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 8, 2010 Session

## DAVID MATHEWS, ET AL. v. THE CITY OF CHATTANOOGA, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 09C171      W. Neil Thomas, III, Judge**

---

**No. E2009-01418-COA-R3-CV - FILED SEPTEMBER 15, 2010**

---

David Mathews and Tommy Baker ("Plaintiffs") sued the City of Chattanooga, Tennessee, the Electric Power Board of Chattanooga, and EPB Telecom ("Defendants") for inverse condemnation. Defendants filed motions for summary judgment.[1] After a hearing, the Trial Court granted Defendants summary judgment finding and holding, *inter alia*, that there were no genuine issues of material fact and that the claim for inverse condemnation was barred by the statute of limitations contained in Tenn. Code Ann. § 29-16-124. Plaintiffs appeal to this Court. We hold that the claim for inverse condemnation fails because no taking occurred, and summary judgment was properly granted to Defendants. The judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

John C. Cavett, Jr., Chattanooga, Tennessee, for the appellants, David Mathews and Tommy Baker.

Kathryn G. Smith, Chattanooga, Tennessee, for the appellee, EPB Telecom.

Frederick L. Hitchcock and Thomas C. Greenholtz, Chattanooga, Tennessee, for the appellee, Electric Power Board of Chattanooga.

---

[1]Defendants filed two motions for summary judgment based on separate grounds as will be discussed below.

Michael A. McMahan and Valerie L. Malueg, Chattanooga, Tennessee, for the appellee, the City of Chattanooga.

## OPINION

### Background

Plaintiffs sued Defendants claiming, among other things, that Defendants had used easements granted to Defendants for the transmission of electric service for another purpose, the transmission of cable service, thus taking an alleged valuable property right without compensation. Plaintiffs requested certification of a class.[2] Defendants filed two motions for summary judgment, one claiming that the express terms of the easements allowed the installation of fiber optic cable and that transmission of other data or information through the cable would add no burden to Plaintiffs' properties, and the other claiming that Plaintiffs' claims were barred by the statute of limitations.

After a hearing, the Trial Court entered its Memorandum and Judgment on June 26, 2009 finding:

> The parties have stipulated to the following facts. The Plaintiffs, David Mathews and Tommy Baker ("Mathews and Baker"), each own a piece of land in Hamilton County, Tennessee. Both Mathews' and Baker's predecessors in title granted express easements to the Tennessee Electric Power Company which were later acquired by EPB. In 2007, EPB's contractor installed fiber optical cables on power poles located on Mathews' and Baker's properties. The installation of those cables would be permitted under the easements given to the EPB for their present use. The Plaintiffs contend, however, that under the present easements they could not transmit cable television, telephone calls and the internet. Transmission of those features would not begin until some years from now, and there would be no effect on the property from their transmission.

> On January 27, 2009, Mathews and Baker filed their complaint against EPB for inverse condemnation.

[2]As best we can tell from the record before us, the parties agreed to postpone the issue of certification of a class until after resolution of the motions for summary judgment.

The Trial Court's June 26, 2009 judgment granted summary judgment to Defendants holding that the applicable one-year statute of limitations contained in Tenn. Code Ann. § 29-16-124 had begun to run at the time the fiber optic cable was installed in September of 2007, and that Plaintiffs' suit, not filed until January of 2009, was, therefore, time-barred.

Plaintiffs appeal to this Court.

## Discussion

Although not stated exactly as such, Plaintiffs raise one issue on appeal: whether the Trial Court erred in granting summary judgment to Defendants.

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

> The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

> A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id.* at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id.* at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd*

*v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

The Trial Court granted summary judgment on the basis that the one-year statute of limitations, Tenn. Code Ann. § 29-16-124, began to run at the time the fiber optic cable was installed in 2007 and that since Plaintiffs did not file suit until January of 2009, the suit was time-barred. There is no dispute, however, that Defendants had the lawful right to install the fiber optic cable within the easement. Nor do Plaintiffs dispute that Defendants have the lawful right to use that fiber optic cable for the transmission of electric service.

We hold that because Defendants had the unquestioned lawful right to install the fiber optic cable within the easement for the transmission of electric service, the installation which occurred in 2007 for that stated purpose was not a taking that triggered the running of the statute of limitations as to the alleged taking for the transmission of cable services over the same fiber optic cable. The Trial Court erred in its decision that the statute of limitations had begun to run in September 2007.

Before we need to determine further whether the statute of limitations otherwise bars Plaintiffs' suit, we first must determine whether a taking ever occurred which would have triggered the running of the statute of limitations. "[U]ntil there is a 'taking' the statute of limitations does not begin to run." *Knox County v. Moncier*, 455 S.W.2d 153, 156 (Tenn. 1970). "In determining what amounts to a 'taking' in a case and when the 'taking' is complete so as to give the landowner a cause of action and begin the running of the statute of limitations, the Court must look to the facts in the particular case under consideration." *Id*. Although the question of whether a taking has occurred which would trigger the statute of limitations is "frequently a question of fact to be determined by the jury or trier of fact … if the evidence is undisputed and only one conclusion can be drawn therefrom, the time of the accrual of the cause of action is a question of law to be determined by the Court."

*Osborne Enters., Inc. v. City of Chattanooga*, 561 S.W.2d 160, 165 (Tenn. Ct. App. 1977).

Our Supreme Court explained the concepts of eminent domain, inverse condemnation, and takings stating:

> The Tennessee Constitution states that "no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor." Tenn. Const. art. I, § 21. This constitutional provision recognizes the governmental right of eminent domain. The government is prohibited, however, from taking property for private purposes and must pay just compensation when property is taken for public use. *See Jackson v. Metro. Knoxville Airport Auth.*, 922 S.W.2d 860, 861 (Tenn. 1996). The Tennessee General Assembly has implemented this provision by its passage of eminent domain and inverse condemnation statutes. *See* Tenn. Code Ann. §§ 29-16-101 to 29-16-127 (2000 & Supp. 2002); 29-17-101 to 29-17-1202 (2000).

> "Inverse condemnation" is the popular description for a cause of action brought by a property owner to recover the value of real property that has been taken for public use by a governmental defendant even though no formal condemnation proceedings under the government's power of eminent domain have been instituted. *See Johnson v. City of Greeneville*, 222 Tenn. 260, 435 S.W.2d 476, 478 (Tenn. 1968). A "taking" of real property occurs when a governmental defendant with the power of eminent domain performs an authorized action that "destroys, interrupts, or interferes with the common and necessary use of real property of another." *Pleasant View Util. Dist. v. Vrandenburg*, 545 S.W.2d 733, 735 (Tenn. 1977). Not every destruction or injury to property caused by governmental action, however, constitutes a taking under article I, section 21 of the Tennessee Constitution. *See Jackson*, 922 S.W.2d at 862 (citing *Prune Yard Shopping Ctr. v. Robins*, 447 U.S. 74, 100 S. Ct. 2035, 64 L. Ed. 2d 741 (1980)). Tennessee courts have recognized two classifications of takings: physical occupation takings and nuisance-type takings. *See id.* at 862-63.

> Physical occupation takings arise when a governmental defendant causes either a direct and continuing physical invasion of private property or a destruction of a plaintiff's property rights. *See generally Ill. Cent. R.R. Co. v. Moriarity*, 135 Tenn. 446, 186 S.W. 1053 (Tenn. 1916); *Barron v. City of Memphis*, 113 Tenn. 89, 80 S.W. 832 (Tenn. 1904). The construction of a

permanent improvement by a governmental defendant that diverts water from a stream onto private property and causes flooding is an example of a direct and continuing physical invasion of real property. *See Barron*, 80 S.W. at 832-33; *see also Jackson* 922 S.W.2d at 862. We have held that such direct and physical invasions constitute a governmental taking when real property is either actually appropriated or the common and necessary use of the property is rendered impossible or seriously interrupted. *See Barron*, 80 S.W. at 832-33; *see also Jackson*, 922 S.W.2d at 862. Physical occupation takings may also arise when a governmental defendant causes a destruction of a plaintiff's property rights. The destruction of the easement of access to and from a plaintiff's home by the closing of a street is an example of a destruction of a property right. *See Moriarity*, 186 S.W. at 1053-54; *see also Jackson*, 922 S.W.2d at 862. This type of physical occupation constitutes a taking when there is a diminution in the value of real property peculiarly affected and directly invaded that is not shared by the public at large. *See Moriarity*, 186 S.W. at 1054; *see also Jackson*, 922 S.W.2d at 862.

Tennessee courts also recognize nuisance-type takings. *See, e.g., Jackson*, 922 S.W.2d at 862; *Johnson*, 435 S.W.2d at 480. Such a taking occurs when the governmental defendant interferes with a landowner's beneficial use and enjoyment of the property. *See Jackson*, 922 S.W.2d at 862; *Johnson*, 435 S.W.2d at 480. For example, this Court has held that a government's extension of a runway that results in noise, vibration, and pollutants from airplanes flying at low altitudes to the detriment of nearby private property may be a taking. *Jackson*, 922 S.W.2d at 861, 863-64. In *Jackson*, we established the standard for determining whether a nuisance-type taking has occurred: the plaintiff must allege a direct and substantial interference with the beneficial use and enjoyment of the property; this interference must be repeated and not just occasional; the interference must peculiarly affect the property in a manner different than the effect of the interference to the public at large; and the interference must result in a loss of market value. *Id*. at 865.

*Edwards v. Hallsdale-Powell Util. Dist.*, 115 S.W.3d 461, 464-65 (Tenn. 2003).

Given the facts and circumstances in the case now before us, Plaintiffs are claiming what best fits under the category of a nuisance-type taking. Plaintiffs, however, made the following admissions:

28. The fiber optic cable that EPB has installed within the 100-foot wide easements is approximately one (1) inch in diameter.

* * *

32. Data is transmitted through the fiber optic cable by light pulses that travel through the cable's individual fiber optic elements.

33. The light pulses that transmit data through the fiber optic cable produce no electrical or magnetic effect and are undetectable.

34. There is absolutely no change in the fiber optic cable if it is used to transmit light pulses carrying data relating to electric facility control and metering or data related to communications services such as cable TV programming, telephone calls, or Internet searches.

35. The same fiber optic cables that will tie together all of EPB's electric substations, facilities, and customer meters will also be used to transmit light pulses carrying other types of communications.

36. There will be no additional maintenance required for the fiber optic cables beyond that needed to maintain the smart grid for electric system purposes.

37. The transmission on the fiber optic cable of light pulses that carry communications data relating to cable TV programming, telephone calls, or Internet searches will add no additional operational or maintenance burden to property over which the fiber optic cable passes.[3]

(citations omitted).

---

[3]Along with their motions for summary judgment, Defendants filed a document titled a Statement of Material Facts as to Which There is No Genuine Issue for Trial: Express Easement Rights. This statement of material facts contained 37 numbered paragraphs. In their response to this statement of material facts, Plaintiffs responded to only the first 36 numbered paragraphs. Plaintiffs failed to respond to fact paragraph number 37. Under Tenn. R. Civ. P. 36, paragraph 37 of Defendants' statement of material facts is deemed admitted. *See Holland v. City of Memphis*, 125 S.W.3d 425, 428 (Tenn. Ct. App. 2003) (stating "the material facts [submitted on a motion for summary judgment] set forth in the statement of the moving party may be deemed admitted in the absence of a statement controverting them by the opposing party.").

As Plaintiffs have admitted that the use of the fiber optic cable to carry light pulses for purposes other than, and in addition to, electric service will be undetectable and will add no additional operational or maintenance burden to the property, there is no "direct and substantial interference with the beneficial use and enjoyment" of Plaintiffs' property. *Edwards*, 115 S.W.3d at 465. Based on the record before us, "the evidence is undisputed and only one conclusion can be drawn therefrom …." *Osborne Enters., Inc.*, 561 S.W.2d at 165. Because there is no "direct and substantial interference with the beneficial use and enjoyment" of Plaintiffs' property, no taking has occurred. *Edwards*, 115 S.W.3d at 465. There can be no inverse condemnation absent a taking. As there was no taking and thus no inverse condemnation, Defendants are entitled to summary judgment.

This Opinion is not intended to give carte blanche to easement holders to begin using easements for additional purposes. Our holding is limited strictly to the facts in this case wherein Defendants were able to demonstrate that Plaintiffs were unable to establish an essential element of their claim, i.e., that a taking had occurred.

We hold that the grant of summary judgment to Defendants was proper, albeit on grounds other than that found by the Trial Court.[4] We, therefore, affirm the grant of summary judgment to Defendants.

### **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellants, David Mathews and Tommy Baker, and their surety.

_____
D. MICHAEL SWINEY, JUDGE

---

[4]"[I]f the Trial Judge reached the right result for the wrong reason, there is no reversible error." *Shutt v. Blount*, 249 S.W.2d 904, 907 (Tenn. 1952).