IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 6, 2007 Session

# WILSON COUNTY BOARD OF EDUCATION v. WILSON COUNTY EDUCATION ASSOCIATION AND STEVE JOHNSON

**Appeal from the Chancery Court for Wilson County**
**No. 03344      C. K. Smith, Chancellor**

---

**No. M2005-02719-COA-R3-CV - Filed June 30, 2010**

---

An assistant principal was transferred to a teaching position and grieved the transfer pursuant to a locally negotiated agreement between the local board of education and the organization representing teachers. After pursuing remedies through the school board, the teacher asked the trial court to compel the board to arbitrate resolution of the dispute. The trial court granted summary judgment to the school board, concluding that Tenn. Code Ann. § 49-2-303 applied since "assistant principals" are statutorily the same as "principals" and, under the holding in *Marion County Board of Education v. Marion County Education Association*, 86 S.W.3d 202 (Tenn. Ct. App. 2001), the director of schools has the authority to transfer principals unrestrained by locally negotiated agreements. Mr. Johnson and the association appealed, claiming that Tenn. Code Ann. § 49-2-303 does not apply to assistant principals and that the director of schools must comply with their agreement in making transfer decisions. We agree that the arbitration provision is not enforceable, but for a different reason. We hold that there was no meeting of the minds as to the procedure to be used as the final step in the grievance procedure. Consequently, there was no enforceable agreement to arbitrate.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined. WILLIAM B. CAIN, J., did not participate.

Richard L. Colbert, Amy W. Malone, Nashville, Tennessee, for the appellants, Wilson County Education Association and Steve Johnson.

Michael R. Jennings, Lebanon, Tennessee, for the appellee, Wilson County Board of Education.

**OPINION**

Mr. Johnson was transferred by the director of schools from his position as Assistant Principal at Lebanon High School to a position as an art teacher at Gladeville Elementary School. At all times relevant herein, the Wilson County Board of Education ("Board") and the Wilson County Education Association ("Association") were parties to a locally negotiated agreement ("Agreement") under the Education Professional Negotiations Act, Tenn. Code Ann. § 49-5-601 *et seq.* ("EPNA"). Mr. Johnson filed a grievance under the Agreement disputing his transfer.

The grievance filed by Mr. Johnson was made pursuant to Article 2 of the Agreement, which provides, *inter alia*, that if a grievance is not resolved by the fourth step, it is submitted to arbitration. The grievance made its way through the process described in Article 2 of the Agreement and was denied at every level. Before Mr. Johnson's grievance was heard by an arbitrator, the Board filed this action in Wilson County Chancery Court against Mr. Johnson and the WCEA seeking a declaratory judgment and a stay of arbitration. The Board sought a declaratory judgment that it was not required to submit to binding arbitration of Mr. Johnson's claim. According to the Board, the Agreement "does not contemplate a surrender of management authority over . . . transfers within the system" and, if it did, any such provision in the Agreement was beyond the authority of the Board to surrender.

Mr. Johnson and the Association filed a motion for summary judgment. Upon concluding that the issues presented were purely matters of law, the trial court requested the Board to likewise file a motion for summary judgment.

On November 1, 2005, the trial court entered its order concluding that Tenn. Code Ann. § 49-2-303, which governs the employment of principals, included "assistant principals" and that the director of schools has the statutory authority to appoint or reappoint assistant principals unrestrained by locally negotiated agreements. Mr. Johnson and the Association appealed, claiming that Tenn. Code Ann. § 49-2-303 does not apply to assistant principals and that the director of schools must comply with the Agreement in making transfer decisions.

-2-

# I. Mr. Johnson's Grievance

The Agreement at issue herein specifically addressed transfers, and Article 6(A) of the Agreement governs Involuntary Transfers.[1] Mr. Johnson makes no allegation that the director failed to comply with the procedural aspects of transfers found in Article 6(A).

Instead, Mr. Johnson based his grievance on other sections of the Agreement. He argues that his transfer violated several subsections of Article VIII of the Agreement governing Personnel Policies and Practices. Article 8(A)(3), governing Employee Evaluation, requires evaluation of tenured employees under State Board of Education guidelines which Mr. Johnson claims was not done. Since he was not evaluated, Mr. Johnson argues that the Board did not comply with other provisions regarding evaluation, such as opportunity to respond. Article 8(A)(5) requires "definite positive assistance" to be provided upon recognition of "professional difficulties," which Mr. Johnson claims he did not receive. Mr. Johnson claims Article (8)(B)(3) giving him access to his personnel file was violated since he was informed his file had been lost when a previous principal left. Article 8(B)(4) governing use of files provides as follows:

> The Director of Schools shall not base any adverse action against an employee upon materials which are not contained in such employee's personnel or evaluation file. Moreover, the Director of Schools shall not base any adverse action against an employee upon materials which are contained in such employee's personnel or evaluation file unless the materials had been placed in the file at the time of the incident giving rise to such materials and the

---

[1] Specifically, the transfer provision states:

1. An involuntary transfer or reassignment may be made for administrative and/or disciplinary reasons pursuant to TCA § 49-5-510.
2. Employees who have been involuntarily transferred or reassigned for administrative reasons shall be given preference over those employees seeking voluntary transfers when a vacancy is to be filled during the summer months, with the approval of the receiving principal.
3. a. When transfer requests have been granted, teacher notification will occur prior to notification of the Board.
   b. Notice of a transfer or reassignment shall be given to an employee prior to notification of the Board.
   c. An involuntary transfer or reassignment shall be made only after a meeting between the employee and the Director of Schools or his designee, if said meeting is requested by the employee.

employee had been notified at such time that such materials were placed in the file.

According to Mr. Johnson, if a file had existed it "would have impacted the Director's decision" about his placement. Under Article 8(C)(1) of the Agreement, the director of schools is to provide employees an "expected correction of deficiencies in writing, and shall indicate a reasonable period of correction." Mr. Johnson argues he received no such notice.

Mr. Johnson finally argues that the director of schools violated the Agreement since he was transferred "without just cause." Article 8(C)(3)(c) provides as follows:

> a. No tenured employee shall be discharged, non-renewed, suspended, disciplined, reprimanded, adversely evaluated, reduced in rank or compensation, or deprived of any professional advantage without just cause.

In effect, Mr. Johnson argues that the problems with his personnel file and apparent inaction in the face of what must have been perceived as "professional difficulties" as an assistant principal removed any standing the director of schools may have had to reduce his rank and pay by transferring him. Consequently, he argues, he was transferred without "just cause." We note that while Mr. Johnson was a tenured teacher, he did not enjoy tenure in his administrative assignment. Tenn. Code Ann. § 49-5-501(11)(A).

In his grievance, for relief Mr. Johnson asked that either he "be made whole by paying the amount due him as an administrator or place him in an administrative position of the same rate of pay."[2]

---

[2]Although it is not perfectly clear in the record, it appears that the transfer had the effect of reducing Mr. Johnson's pay. The grievance itself raises issues. For example, Mr. Johnson's allegations are based in large part upon his assertion that his transfer was due to performance - related issues and that procedures set out in the Agreement applicable to performance - related actions were not followed. Part of this assertion rests upon the provision in the Agreement that Mr. Johnson interprets as limiting involuntary transfers to those made with "just cause." Because state statute gives school system administrators broad authority to make transfers for "the efficient operation of the system," Tenn. Code Ann. § 49-5-510, there is a significant question regarding the appropriate interpretation of any provision in a locally negotiated agreement that purports to limit the grounds upon which a transfer can be made. Additionally, as the provision quoted in footnote 1 makes clear, the Agreement itself allows involuntary transfers for reasons set out in Tenn. Code Ann. § 49-5-510.

## II. INTERVENING EVENTS

At the time this appeal was orally argued, counsel for the parties and this court were aware that the Tennessee Supreme Court had granted permission to appeal in a case which involved issues similar to those presented herein and might, therefore, be relevant to the resolution of this case. The Court subsequently filed its opinion in that case, *Lawrence County Educ. Ass'n v. Lawrence County Bd. of Educ.*, 244 S.W.3d 302 (Tenn. 2007) and thereafter denied a petition for rehearing that had been filed by the Education Association and the teacher/coach.

In our review of the effect of the *Lawrence County* decision on this appeal, we determined that the parties should be asked to submit additional briefs regarding two issues that had not been addressed in the original briefing. Accordingly, we requested additional briefing on: (1) whether the parties agreed to arbitration to resolve grievance disputes and/or what kind of alternative dispute resolution procedure did they agree to follow, and (2) whether an assistant principal is, or whether administrative duties performed by an assistant principal are, included in the protections provided by the EPNA.

## III. AGREEMENT TO ARBITRATE

In this court's order regarding supplemental briefing, we asked the parties to address the issue of whether the parties had actually agreed to resolve grievance disputes through binding arbitration. Specifically, the order stated:

> The . . . issue involves whether the parties agreed to a dispute resolution process and, if so, what is that procedure. Under the Tenn. Code Ann. §§ 49-5-602(1) and 49-5-601 *et seq*. the parties were authorized to include procedures for final and binding arbitration of disputes arising under the agreement, but such arbitration is not governed by Tennessee's statutes on arbitration.

> Parties may agree to resolve their disputes in any legal way they choose, and they are not limited to formal methods of dispute resolution recognized and defined by statute or rule. Instead, private parties may agree on "any mutually satisfactory procedure that is not illegal or contrary to public policy." *Team Design v. Gottlieb*, 104 S.W.3d 512, 517 (Tenn. Ct. App. 2002). When parties agree on how to resolve disputes, courts will generally require them to follow their agreed upon procedures. *Id*. at 518.

. . .

-5-

Determination of what the parties agreed to with regard to how to resolve disputes under the Agreement is important in deciding how and whether some of the holdings of *Lawrence County Educ. Ass'n*. apply herein. The arbitration agreed to in the master contract at issue in *Lawrence County* was **not** binding arbitration. Instead, the arbitrator's decision was merely a **recommendation** to the board of education, thereby retaining to the board the final decision, and the board in that case approved or accepted the arbitrator's advisory findings or recommendations. The school board's approval of the remedies recommended by the arbitrator was an important factor in the Supreme Court's holding in *Lawrence County*.[3]

Additionally, the appeal in this case is from an order declaring that the Board was not required to submit to arbitration of Mr. Johnson's grievance regarding his transfer. Obviously, whether the parties effectively agreed to arbitration and how the parties agreed to define that arbitration are relevant in our review of the trial court's order. If there was no enforceable agreement to arbitrate, then the Board could not be compelled to submit to arbitration, and the trial court's judgment must be affirmed.[4]

When parties litigate the effect of a purported agreement to settle disputes by arbitration, the trial court must adjudicate whether the parties have a valid arbitration agreement at all, as well as whether a concededly binding arbitration clause applies to a certain type of controversy. *Thompson v. Terminix Intern. Co.*, *L.P.*, M2005-02708-COA-R3-CV, 2006 WL 2380598, at *4 (Tenn. Ct. App. Aug. 16, 2006) (quoting *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003)). The court must determine the validity of the agreement before submitting the dispute to arbitration. *Taylor v. Butler*, 142 S.W.3d 277, 283 (Tenn.2004).

---

[3] In affirming the trial court's upholding of the arbitrator's decision the Supreme Court stated that the trial court's ruling was due to unique circumstances, *i.e.*, that the board of education had approved the arbitrator's recommendation. Thus, "the BOE, as the supreme authority within the local school system, gave vitality to his claim by adopting the arbitrator's interpretation." 244 S.W.3d at 318. Clearly, a board reserving the final decision to itself, as it did in the contract in the *Lawrence County* case , is substantively different from a board delegating a final decision to an arbitrator who is not part of the local government entity charged with operation of our public schools. *See Cannon County Bd. of Educ. v. Wade*, M2006-02001-COA-R3-CV, 2008 WL 3069466, at *11-12 (perm. app. denied Feb. 17, 2009) (discussing the *Lawrence County* holdings).

[4] The Court of Appeals may affirm a judgment on different grounds from those relied on by the trial court when the trial court reached the correct result. *Continental Cas. Co. v. Smith*, 720 S.W.2d 48, 50 (Tenn. 1986); *Shutt v. Blount*, 194 Tenn. 1, 8, 249 S.W.2d 904, 907 (1952); *In re Estate of Jones*, 183 S.W.3d 372, 378 n.4 (Tenn. Ct. App. 2005); *Shoemake v. Omniquip Int'l, Inc.*, 152 S.W.3d 567, 577 (Tenn. Ct. App. 2003).

"Arbitration is a **consensual** proceeding in which the parties select decision-makers of their own choice and then voluntarily submit their disagreement to those decision-makers for resolution in lieu of adjudicating the dispute in court." *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 149 (Tenn.Ct.App.2001) (emphasis added). "[T]he scope of an arbitrator's authority is determined by the terms of the agreement between the parties which includes the agreement of the parties to arbitrate the dispute." *D & E Const. Co., Inc. v. Robert J. Denley Co., Inc.*, 38 S.W.3d 513, 518 (Tenn.2001) (internal quotation marks omitted). "When the parties agree to arbitrate, they are bound by the terms of that arbitration provision." *Id.* But, "[b]ecause '[a]rbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Rosenberg v. BlueCross BlueShield of Tennessee, Inc.*, 219 S.W.3d 892, 903 (Tenn .Ct.App. 2006) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

"Where the parties have **agreed to be bound by the outcome of their agreed-upon procedure**, the courts will require them to accept the result by declining to try their dispute de novo and by limiting the scope of judicial review of the outcome." *Team Design v. Gottlieb*, 104 S.W.3d at 517 (emphasis added). Parties indicate their intent to be bound by the result from their agreed-upon dispute resolution by the **language used in the agreement**. *Id*. at 517 n. 7.

Accordingly, a dispute over the enforceability of a provision addressing dispute resolution "addresses itself primarily to the application of contract law." *Id.* Likewise, "[c]ourts should generally apply 'ordinary state-law principles' in deciding whether the parties agreed to submit certain issues to arbitration." *Frizzell Const. Co., Inc. v. Gatlinburg*, LLC, 9 S.W.3d 79, 85 (Tenn.1999) (citation omitted); *see also Taylor v. Butler*, 142 S.W.3d at 284; *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 866-70 (Tenn.Ct.App.2002).

Whether the parties have agreed to be bound by the result of a dispute resolution process in an agreement is simply a question of contract interpretation. The question of interpretation of a contract is a question of law. *Guiliano v. Cleo, Inc*, 995 S.W.2d 88, 95 (Tenn. 1999). Our review of conclusions on questions of law is *de novo*, with no presumption of correctness. Tenn. R. App. P. 13(d).

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002). The purpose of interpreting a written contract is to ascertain and give effect to the contracting parties' intentions, and where the parties have reduced their agreement to writing, their intentions are reflected in the

contract itself. *Id.*; *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d at 85. "The intent of the parties is presumed to be that specifically expressed in the body of the contract . . . ." *Planters Gin Co.*, 78 S.W.3d at 890. Therefore, the court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used. *Guiliano*, 995 S.W.2d at 95; *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975). Where the language of the contract is clear and unambiguous, its literal meaning controls the outcome of contract disputes *Planters Gin Co.*, 78 S.W.3d at 890.

Where, however, a contractual provision is ambiguous, *i.e.*, susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. *Planters Gin Co.*, 78 S.W.3d at 890. In that situation, courts must resort to other rules of construction, and only if ambiguity remains after application of the pertinent rules does the legal meaning of the contract become a question of fact. *Id.* Ambiguity exists in a contract when it is "of uncertain meaning and may be fairly understood in more ways than one." *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

In the case before us, our request that the parties address what specific agreement they may have had with regard to resolving disputes over grievances was triggered by the language in the Agreement itself. The grievance procedure is found in Article 2 of the Agreement. Step 1 of the grievance process involves a meeting with the employee's immediate supervisor; Step 2 involves review by the director of schools and a hearing; Step 3 is a review by the Board, including a hearing; Step 4 provides that, "[i]f dissatisfied with the disposition of the grievance at step 3 . . . the Association may submit the grievance to either (1) **panel binding arbitration** or (2) **regular binding arbitration**." The Agreement further describes the two types of arbitration, and the primary distinction between them is whether the grievance is heard by a single person or by a panel.[5]

Both types of "binding arbitration," however, are subject to provisions stating the panel or the arbitrator "**may recommend** reinstatement, financial reimbursement, damages and/or other remedies." (emphasis added). The inconsistency between "**binding arbitration**" and a "**recommendation**", instead of an award, by the arbitrator is obvious.

---

[5]Under paragraph 1 of Article 2, titled "Panel Binding Arbitration," the selection of the members of the three-member panel is set out. Under paragraph 2, titled "Regular Binding Arbitration," the parties agreed to request the American Arbitration Association to submit a panel, from which the parties will select an arbitrator, according to specified selection procedures. There is no provision that the arbitration will be conducted pursuant to AAA rules.

They are more than inconsistent; they are mutually exclusive. They cannot both be given effect as defining the result of the final step in the grievance process.[6]

The Agreement itself does not contain any further description of the process to be used, nor does it address the final decision-making authority regarding grievance disputes.[7] In other words, the parties did not address the specifics of the dispute resolution method they agreed to. While parties may agree on "any mutually satisfactory procedure" for resolving disputes between them,"[8] *Team Design v. Gottlieb*, 104 S.W.3d at 517, before courts will require parties to submit to that procedure, it must be shown that an enforceable agreement exists. The question raised by the language of the Agreement in the case before us is whether the parties actually reached an agreement as to a procedure for resolving their disputes.

In the absence of contractual provisions describing the parties' intent with regard to the procedure to be used, we look to statutory provisions for aid in interpreting the Agreement's Step 4 language. Under the EPNA, a local board of education and a recognized professional employees' organization may include in an agreement "covering terms and conditions of professional service . . . **procedures** for final and binding arbitration of such disputes as may arise involving the interpretation, application, or violation of the agreement." Tenn. Code Ann. § 49-5-612(c) (emphasis added). That provision does not further describe the procedures to be followed in any such "final and binding arbitration." Its plain language indicates that, if the parties agree to arbitrate disputes arising under an agreement, they are to devise the procedures to be used and include them in the Agreement. This necessarily

---

[6]Although the agreement in *Lawrence County* was interpreted as providing for an arbitrator's recommendation to the school board, we do not know the exact language of that agreement and, for example, whether it also purported to provide for "binding" arbitration resulting in arbitrator's recommendation. In that case, the parties agreed that the arbitrator's decision was advisory only, not binding, and subject to approval or disapproval of the board.

[7]The Agreement does not specifically state to whom the arbitrator's recommendations are to be made, but the *Lawrence County* opinion makes clear that the Tennessee Supreme Court believes that the local school board has final authority on transfers and that any recommendations, therefore, are directed to the board.

[8]We are aware, of course, that the Board of Education is not a private party. Limitations, even prohibitions, exist with regard to a governmental entity's ability to agree to alternative dispute resolution. While the specifically applicable statute permits the inclusion of "final and binding arbitration" in locally negotiated agreements, that does not authorize the inclusion of any and every substantive term. *See Cannon County Bd. of Educ. v. Wade*, 2008 WL 3069466, at *13 (holding that an arbitration provision in a locally negotiated agreement could not be enforced or interpreted to give an arbitrator authority to decide to renew a probationary teacher's employment, which is a decision given by statute to local school officials).

implies that there are no procedures that are to be generally applied without their being spelled out in a particular agreement.

Another provision of the EPNA defines "arbitration" as "the process of determination of disputed matters by submission to private unofficial persons selected for a purpose and in a manner consistent with this part."[9] Tenn. Code Ann. § 49-5-602(1). That provision continues, however, by stating "Arbitration under this part is not governed by the provisions of title 29, chapter 5." *Id.* Title 29, chapter 5 includes the statutory provisions governing arbitration and, specifically, Tennessee's version of the Uniform Arbitration Act, Tenn. Code Ann. § 29-5-301 *et. seq.*[10] Consequently, specific legislative language prevents recourse to the Arbitration Act, or cases decided under that Act, to supply a definition of arbitration as used in the Agreement herein, or to provide an understanding of the procedures that would ordinarily apply.[11]

In the absence of a statutory guidelines or specific language in the Agreement, we asked the parties to address the type of dispute resolution to be followed and whether there was agreement to a specific procedure. In response, the parties have offered differing interpretations of the language of the Agreement, even though they both insist that the Step 4 language is unambiguous.

The Association asserts that the parties expressly agreed to "binding arbitration," and that the use of the term "recommend" with regard to the arbitrator's authority over remedies was just inartful. A similar argument could be made, we believe, emphasizing the express agreement that the arbitrator simply "recommend" a remedy, while characterizing the use of the term "binding" as inartful. In other words, nothing in the language used in the Agreement would suggest to us that one inconsistent term was mistakenly used or that the other one embodied the parties' intent.

---

[9]This "part," the Education Professional Negotiations Act, also includes the use of mediation and fact-finding/advisory arbitration as part of the process of negotiation toward an agreement, Tenn. Code Ann. § 49-5-613(b), and describes the role and procedure for any such "arbitrator." Tenn. Code Ann. § 49-5-613(c). Therefore, we interpret the "selected for a purpose, and in a manner consistent with this part" language as referring to the two different roles envisioned for persons called "arbitrators."

[10]In addition to establishing various rules regarding procedure used in arbitration, that Act contains provisions governing court enforcement of arbitration agreements and court review of arbitration awards.

[11]There is no basis for application of the Federal Arbitration Act, and neither party asserts such application.

The Association further argues that it is not reasonable to believe that a grieving party "would commit to pay the expenses of an arbitrator for a purely advisory award that the Board, having already rejected the grievance at Step 3, could simply disregard."[12] The conclusion we are to reach from that assertion is that it would be an unreasonable interpretation of the Agreement to hold that the parties agreed to a procedure that would result in a third-party recommendation to the school board on any grievance dispute, because the board is already included in Step 3 of the grievance process.

We cannot agree. First, this is apparently the procedure agreed to in *Lawrence County*. In that case, the "arbitrator" made a recommendation to the school board, after a hearing and as the final step after school board denial of the grievance. Hence, other parties in similar situations have made just such an agreement. Second, the Tennessee Supreme Court has recognized a procedure for non-binding arbitration, defining it as "a process in which a neutral person or a panel, called an arbitrator or an arbitration panel, considers the facts and arguments presented by the parties and renders a decision which is non-binding." Tenn. R. S. Ct. 31, Sec. 2(k).[13]

Finally, such a procedure recognizes the school board's role, authority, and statutory responsibilities as to certain personnel matters. *See Cannon County Bd. of Educ. v. Wade*, 2008 WL 3069466, at *6, *13 (holding that the statutory authorization to agree to arbitrate does not authorize a local school board to delegate to an arbitrator all disputes regarding the administration of the local school system and that "a locally negotiated agreement's terms cannot be interpreted or applied in a way to achieve a result that is outside the statutory authority" and that contracts cannot change statue or be enforced to effectuate a result that is contrary to statute); *see also Lawrence County Educ. Ass'n. v. Lawrence County Bd. of Educ.* 244 S.W.3d at 318-19 (holding that a locally negotiated agreement cannot be interpreted to give statutory duties of a local school official to an arbitrator).

On the other hand, the Board herein argues that the provision in the Agreement regarding "binding arbitration" does not comply with the statute allowing the inclusion in such collective bargaining agreements of "final and binding arbitration." Tenn. Code Ann. § 49-5-612(a). The Board further argues that the failure to use the language recommended in the statute shows that the parties "did not intend that this [Step 4] would be the final step

---

[12]The Board points out that the Agreement allows the Association to request arbitration, not an individual grievant.

[13]Rule 31 authorizes a trial court, with the consent of the parties, to order non-binding arbitration. Tenn. R. S. Ct. 31, Sec. 21. However, Rule 31 only applies to court-annexed dispute resolution which is triggered after a lawsuit is filed, so it does not apply to this case.

in the [grievance] process." The Board also asserts that use of the term "recommend" is not inartful, but instead expresses the parties' agreement since they did not use the statutory language and chose specifically to use the term "recommend" in describing the dispute resolution neutral's authority as to remedies. Again, we cannot agree.

Each party urges an interpretation that ignores an express term in the Agreement's provision on dispute resolution. We find no basis in law, in the Agreement, or in any facts in the record to ignore either term. Instead, we conclude that the parties did not actually agree on the **procedures** for final resolution of disputes arising under the Agreement's grievance process. Tenn. Code Ann. § 49-5-612(c) (emphasis added). In other words, the parties did not have a meeting of the minds on that issue.

A contract must result from a meeting of the minds of the parties and must be sufficiently definite to be enforced. *In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006) (citing *Johnson v. Central National Ins. Co. of Omaha* , 356 S.W.2d 277, 281 (Tenn. 1961)). A contract must result from a meeting of the minds of the parties in mutual assent to the terms. *Staubach Retail Services-Southeast, LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001). As explained by our Supreme Court:

> A contract "'must result from a meeting of the minds of the parties in mutual assent to the terms, must be based upon a sufficient consideration, free from fraud or undue influence, not against public policy and sufficiently definite to be enforced.'" *Higgins v. Oil, Chem., and Atomic Workers Int'l Union, Local # 3-677*, 811 S.W.2d 875, 879 (Tenn.1991) (quoting *Johnson v. Central Nat'l Ins. Co. of Omaha*, 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (Tenn.1962) (citations omitted)). Indefiniteness regarding an essential element of a contract "may prevent the creation of an enforceable contract." *Jamestowne On Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 565 (Tenn. Ct. App.1990) (citing Hansen v. Snell, 11 Utah 2d 64, 354 P.2d 1070 (1960)). A contract " 'must be of sufficient explicitness so that a court can perceive what are the respective obligations of the parties.'" *Higgins*, 811 S.W.2d at 880 (quoting *Soar v. National Football League Players' Ass'n*, 550 F.2d 1287, 1290 (1st Cir.1977)); *see also* Restatement (Second) of Contracts § 33(2) (1981) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.")

*Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d at196. Without any "meeting of the minds of the parties in mutual assent to the terms . . . ," there can be no enforceable contract. *Id*.

Because the parties did not reach a meeting of the minds with regard to the procedures that would result in a final resolution of disputes relating to grievances under the locally negotiated agreement herein, we affirm the trial court's judgment declaring that the Wilson County Board of Education was not required to submit Mr. Johnson's grievance to an arbitrator.

## CONCLUSION

We affirm the judgment of the trial court. Costs of this appeal are to be divided equally between the appellants, as a group, and the appellee.

_____
PATRICIA J. COTTRELL, JUDGE