IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2017 Session

## TENNESSEE FARMERS MUTUAL INSURANCE COMPANY v. SOUTHERN DAMAGE APPRAISALS, LLC

**Appeal from the Circuit Court for Robertson County**
**No. 74CC1-2015-CV-104     Ross H. Hicks, Judge**

---

**No. M2017-00164-COA-R3-CV**

---

Tennessee Farmers Mutual Insurance Company ("TN Farmers"), a/s/o Jared Smalley and Cara Gurszecki ("the Homeowners") sued Southern Damage Appraisals, LLC a/k/a Willow Works ("SDA") in connection with a construction project that SDA performed on the Homeowners' house located in Robertson County, Tennessee. SDA filed a motion for summary judgment alleging that the suit was barred by the statute of repose contained in Tenn. Code Ann. § 28-3-202. After a hearing on the motion for summary judgment, the Circuit Court for Robertson County ("the Trial Court") entered its order granting summary judgment to SDA after finding and holding, *inter alia*, that TN Farmers' claim was for subrogation, the claim was subject to the four year statute of repose contained in Tenn. Code Ann. § 28-3-202, and as the claim had been filed more than four years after substantial completion of the work TN Farmers' claim was barrred. We find and hold that the claim was one for subrogation asserting a right pursuant to an alleged contract between the Homeowners and SDA, that TN Farmers failed to show the existence of any contract between the Homeowners and SDA, and that even if a contract between the Homeowners and SDA did exist coverage for such a contract would be excluded under the insurance policy between TN Farmers and the Homeowners. We, therefore, find and hold that the Trial Court did not err in granting summary judgment to SDA.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S. and RICHARD H. DINKINS, J., joined.

Jonathan A. Garner, Springfield, Tennessee, for the appellant, Tennessee Farmers Mutual Insurance Company a/s/o Jared Smalley and Cara Gurszecki.

Benjamin E. Goldammer, Nashville, Tennessee, for the appellee, Southern Damage Appraisals, LLC a/k/a Willow Works.

## OPINION

## Background

In December of 2009, the Homeowners sustained wind and water damage to their house located in Greenbrier, Tennessee when a tree fell on the house during a storm. The house was approximately two years old at that time. The Homeowners made a claim for the storm damage under their homeowner's insurance policy with TN Farmers ("Insurance Policy").

At that time, TN Farmers had a contractual agreement with SDA ("the Quality Repair Program") for SDA to be a preferred contractor for TN Farmers. SDA was hired to replace the Homeowners' roof and perform some other work related to the storm damage. Work was completed in April of 2010, and the homeowner, Jared Smalley, signed a Quality Repair Program Certificate of Satisfaction & Authorization to Pay showing a completion date of February 26, 2010. TN Farmers paid the claim pursuant to the Insurance Policy.

In April of 2012, the Homeowners discovered water damage in their house allegedly due to faulty roof repair. TN Farmers paid to fix the roof and the areas of the house that had been damaged, among other things. TN Farmers then sued SDA in March of 2015 claiming subrogation under the Insurance Policy to the right of recovery of the Homeowners.

SDA filed a motion for summary judgment alleging that the suit was barred by the four year statute of repose contained in Tenn. Code Ann. § 28-3-202. SDA alleged that the work was completed in February of 2010, the repose period under the statue ended in February of 2014, and TN Farmers did not file suit until March of 2015. SDA also alleged that the claim raised by TN Farmers was barred by the voluntary payment doctrine because TN Farmers was a mere volunteer as to its payment related to the damages from the alleged faulty roof repair and not, therefore, entitled to subrogation.

After a hearing, the Trial Court entered its order on December 14, 2016 granting summary judgment to SDA after finding and holding, *inter alia*, that the instant case was a subrogation action subject to the four year statute of repose in Tenn. Code Ann. § 28-3-202, and as the claim had been filed more than four years after substantial completion of SDA's work, TN Farmers's claim against SDA was barred. The December 14, 2016

2

order also found and held that TN Farmers' payments to the Homeowners for the 2012 claim were voluntary payments for losses not covered under the Insurance Policy, and therefore, TN Farmers was not entitled to seek subrogation. TN Farmers appealed the December 14, 2016 order to this Court.

## **Discussion**

The dispositive issue in this case is whether the Trial Court erred in granting summary judgment to SDA. As our Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

> * * *

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary

3

judgment is made [and] . . . supported as provided in [Tennessee Rule 56],” to survive summary judgment, the nonmoving party “may not rest upon the mere allegations or denials of [its] pleading,” but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, “set forth specific facts” *at the summary judgment stage* “showing that there is a genuine issue for trial.” Tenn. R. Civ. P. 56.06. The nonmoving party “must do more than simply show that there is some metaphysical doubt as to the material facts.” *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S. Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party’s evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women’s Care Cntr. of Memphis, MPLLC*, 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

In its brief on appeal, TN Farmers argues that the Trial Court erred in finding that the cause of action was a claim for subrogation. TN Farmers argues, despite the language of the complaint, that its cause of action was one for a breach of a contract between TN Farmers and SDA and not a claim for subrogation. TN Farmers then argues that because the Trial Court erred in determining the gravamen of the suit to be a claim for subrogation, the Trial Court applied an incorrect statute of limitations.

Determining which statute of limitations applies is a question of law, which we review de novo with no presumption of correctness. *Benz-Elliott v. Barrett Enters., LP*, 456 S.W.3d 140, 147 (Tenn. 2015). In *Benz-Elliott v. Barrett Enters., LP*, our Supreme Court instructed:

[I]n choosing the applicable statute of limitations, courts must ascertain the gravamen of each claim, not the gravamen of the complaint in its entirety. *Black v. Sussman*, No. M2010–01810–COA–R3–CV, 2011 WL 2410237, at *8 (Tenn. Ct. App. June 9, 2011); *Bluff Springs Apartments, Ltd. v.*

*Peoples Bank of the South*, No. E2009–01435–COA–R3–CV, 2010 WL 2106210, at *10 (Tenn. Ct. App. May 26, 2010); *Mid–South Indus., Inc. v. Martin Mach. & Tool, Inc.*, 342 S.W.3d 19, 31–32 (Tenn. Ct. App. 2010); *Craighead v. BlueCross BlueShield of Tenn., Inc.*, No. M2007–01697–COA–R10–CV, 2008 WL 3069320, at *8 (Tenn. Ct. App. July 31, 2008); *Lewis v. Caputo*, No. E1999–01182–COA–R3–CV, 2000 WL 502833, at *4 (Tenn. Ct. App. Apr. 28, 2000); *Taylor*, 924 S.W.2d at 113.

## B. Test for Ascertaining Gravamen of Each Claim

Having concluded that a court must consider each claim, rather than the entire complaint, when ascertaining gravamen and choosing the applicable statute of limitations, we next determine the analysis courts should use when undertaking this task. As already noted, although gravamen has long been defined as the basis for which damages are sought, many Tennessee decisions have focused almost exclusively on the damages aspect of this formula and have given little or no consideration to the basis aspect of it. Although not clearly denoted at the time, in *Vance v. Schulder*, this Court modified the analysis to require consideration of both the *basis of the claim* and the *type of injuries* for which damages are sought. 547 S.W.2d at 932; *see also* Elizabeth J. Landrigan, *The Weakest Link: Application of the Property Damage Statute of Limitation to Tort Claims for Purely Economic Damages*, 32 U. Mem. L. Rev. 45, 56 (2001) (describing *Vance* as enunciating a two-step decisional process).

\* \* \*

Today we clarify that the two-step approach articulated in *Vance* and applied in *Alexander* and *Harvest Corp.* is the correct framework for courts to employ when ascertaining the gravamen of a claim for the purpose of choosing the applicable statute of limitations. When utilizing this approach, a court must first consider the legal basis of the claim and then consider the type of injuries for which damages are sought. This analysis is necessarily fact-intensive and requires a careful examination of the allegations of the complaint as to each claim for the types of injuries asserted and damages sought. *Contract Law and Practice* § 12:78, at 595 (2006).

*Benz-Elliott*, 456 S.W.3d at 149, 151.

5

In its brief on appeal, TN Farmers asserts that its claim is one for breach of a contract between TN Farmers and SDA. A careful and thorough review of TN Farmer's complaint, however, reveals otherwise. In its complaint, TN Farmers makes the following allegations:

4. That on or about December 24, 2009, [the Homeowners] sustained damage to their residence located at 1086 Carrs Creek Boulevard in Greenbrier, Robertson County, Tennessee. Aforesaid loss damage was sustained by an act of God wherein wind damage occurred.

5. That as a result of this damage, [the Homeowners] entered an agreement with [SDA] a/k/a Willow Works to perform repairs on the roof, roofing system and other ancillary items on their residence. The agreement by and between [the Homeowners] was for a total replacement of the roof, roofing system and other ancillary items on their residence.

6. That the repairs to the roof, roofing system and other ancillary items on the residence were completed on or about April 2010.

7. That on or about April 1, 2012, [the Homeowners] observed problems with the flooring in a room of their residence. An investigation led to the discovery of water damage throughout multiple rooms within their residence.

8. That [the Homeowners] did seek repairs of of [sic] the water damage throughout their residence. That the water damage throughout their residence was a direct and proximate cause from the faulty and incomplete construction performed by the Defendant, [SDA] a/k/a WILLOW WORKS in the repairs on the roof, roofing system, and other ancillary items.

9. Plaintiff, [TN Farmers] paid to [the Homeowners] and [sic] amount in excess of $125,000.00 for the repairs to their residence and paid monies to satisfy the claims pursuant to the homeowners coverage of that policy of insurance issued to [the Homeowners.]

10. Pursuant to the terms of the aforementioned homeowners insurance policy, Plaintiff is subrogated to the right of recovery of [the Homeowners] to the extent of said payments.

All the allegations in the complaint about a contract refer to an alleged contract between SDA and the Homeowners. Nowhere in the complaint does TN Farmers even mention any contract between TN Farmers and SDA, including the Quality Repair Program. Rather, the short four (4) page complaint refers to the Insurance Policy and asserts that TN Farmers is subrogated to the right of recovery of the Homeowners under the Insurance Policy. As such, we cannot find that the legal basis of the claim asserted by TN Farmers is one for breach of a contract between TN Farmers and SDA. The legal basis of the claim asserted by TN Farmers in the complaint is clearly one for subrogation

to the right of recovery of the Homeowners under the Insurance Policy. Furthermore, a review of the injuries for which TN Farmers seeks damages shows that TN Farmers is seeking to recoup monies it paid to the Homeowners "for the repairs to [the Homeowners's residence] . . . to satisfy the claims pursuant to the homeowners coverage of that policy of insurance issued to [the Homeowners]" with regard to "water damage throughout their residence [that] was a direct and proximate cause from the faulty and incomplete construction performed by the Defendant, [SDA] a/k/a WILLOW WORKS in the repairs on the roof, roofing system, and other ancillary items." Thus, the gravamen of TN Farmers's claim is a claim for subrogation, not breach of any contract between TN Farmers and SDA.

In its complaint, TN Farmers claims a right to subrogation under the Insurance Policy with regard to an alleged contract between the Homeowners and SDA. The record on appeal, however, does not support a finding that a contract existed between the Homeowners and SDA. In its brief on appeal, TN Farmers refers to a contract between the Homeowners and SDA, but its citation to the record in support of this assertion simply does not support the assertion. The citation refers to the deposition testimony of homeowner Jared Smalley wherein Mr. Smalley testified that "[TN Farmers] had arranged for a company to come and repair the roof." A careful and thorough review of the record on appeal reveals that Mr. Smalley further testified: "we didn't pick who was - - I think originally I was going to - - I asked if Ben could do it. He was not actually one of the preferred people. So [TN Farmers] picked, you know, their preferred builder - - or roofer to do it." Mr. Smalley further stated that someone with SDA came to the house to "do the quote back to [TN Farmers]."

Paul Vitolins, the managing member and 99 percent owner of SDA, testified during his deposition that SDA was contacted by TN Farmers in 2009 about the assignment, that SDA then contacted the Homeowners to arrange a time to inspect the house, that SDA prepared an estimate, and that SDA then subcontracted with J&J Roofing Company to replace the Homeowners' roof.

Greg Lott, the designated corporate representative for TN Farmers, testified during deposition that although the Quality Repair Program did not require insureds to utilize the preferred contractors and that TN Farmers had a disclaimer stating that it did not employ or warrant the preferred contractors, the adjuster who handled the claim for the 2009 storm damage told Mr. Lott that he "used [the Quality Repair Program], sent [SDA], they replaced the roof, he wrote a check and that was his involvement in the 2009 claim." When questioned further, Mr. Lott agreed that the claim came from the Homeowners to the adjuster at TN Farmers. Mr. Lott further agreed with the statement that the claim "resulted in monies being paid . . . from [TN Farmers] to Willow Works or SDA[.]"

TN Farmers propounded interrogatories and requests for production to SDA asking if there was "any written agreement concerning the work or job to be performed by you at [the Homeowners' residence] . . . and if so attach a copy of such . . . ." SDA responded: "Yes. The contract was memoralized in a December 29, 2009 Building Estimate, February 27, 2010 Invoice, Quality Repair Program Work Authorization and various other documents produced herewith." These listed documents are documents prepared pursuant to the Quality Repair Program contract between TN Farmers and SDA. Additionally, the 2009 Building Estimate specifically states on the bottom of the first two pages: "This is an estimate of recorded damages and is subject to review and final approval by the insurance carrier." The Quality Repair Program Work Authorization carries the logos of TN Farmers and Willow Works at the top of the form.[1] The Quality Repair Program Certificate of Satisfaction & Authorization to Pay also carries the logo of TN Farmers at the top of the page.

The Trial Court granted summary judgment as to the subrogation complaint filed by TN Farmers based upon the Insurance Policy and an alleged contract between the Homeowners and SDA. On appeal, TN Farmers argues that the Trial Court erred in granting summary judgment as to a complaint predicated upon a contract between TN Farmers and SDA. This latter contract, however, was not the contract discussed in the complaint. The "complaint" relied upon by TN Farmers on appeal was, respectfully, not the complaint filed in the Trial Court as to which the Trial Court granted summary judgment. While this second "complaint" may have been the one TN Farmers now wishes it had filed or intended to file, it was not the one filed that the Trial Court was called upon to address as to the motion for summary judgment.

Given the record now before us, there is no proof that a contract even existed between the Homeowners and SDA. Rather, it appears that the only contract to perform the work of repairing the 2009 storm damage was between TN Farmers and SDA and that the Homeowners received the benefit of that contract. What is clear is that TN Farmers' complaint alleged that TN Farmers was "subrogated to the right of recovery of [the Homeowners] . . . ." Summary judgment on the complaint was appropriate. TN Farmers' complaint relied entirely on an alleged contract between the Homeowners and SDA. On appeal, TN Farmers instead relies upon an alleged contract between TN Farmers and SDA.

Even if we are incorrect and a contract did exist between the Homeowners and SDA, something contrary to TN Farmers' argument on appeal, such a contract would have been for construction or repair of the 2009 storm damage. TN Farmers, however, would have no right of subrogation under the Insurance Policy with regard to such a

_____

[1] The copies of the Quality Repair Program Work Authorization provided in the record on appeal are largely illegible, other than the logos at the top of the form.

8

contract as the Insurance Policy exempts such claims in the first place. In pertinent part, the Insurance Policy provides:

> Under SECTION 1 we do not cover any loss resulting directly or indirectly from any of the excluded events listed below. We do not cover such loss for anyone regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.
>
> * * *
>
> 10. Defect, weakness, inadequacy, fault, or unsoundness in:
>
> a. planning, zoning, development, surveying, siting;
> b. design, specifications, workmanship, construction, grading, compaction;
> c. materials used in construction or repair; or
> d. maintenance;
>
> of any property (including land, structures, or improvements of any kind) whether on or off the residence premises.

The Insurance Policy clearly excludes claims for "[d]efect, weakness, inadequacy, fault, or unsoundness in . . . design, specifications, workmanship, construction, grading, compaction," and "materials used in construction or repair." As such, the Homeowners would have no right under the Insurance Policy for a claim for defects in workmanship or materials pursuant to a contract between the Homeowners and SDA for repair of the 2009 storm damage, and therefore, TN Farmers would have no right of subrogation with regard to such a claim by the Homeowners against SDA for the alleged faulty construction. The Trial Court correctly found that the Insurance Policy excluded such claims.

The Trial Court further found, and we agree, that the payment made by TN Farmers to the Homeowners in 2012 was a voluntary payment that does not entitle TN Farmers to subrogation. Any claim by the Homeowners against SDA for defective workmanship or materials in its work related to the 2009 storm damage was excluded from coverage under the Insurance Policy. As our Supreme Court has explained: "in the absence of legal compulsion to pay the debt of another, voluntary payment of another's debt, absent fraud, accident, mistake, or by contract with the payee, does not entitle one to subrogation." *Hubble v. Dyer Nursing Home*, 188 S.W.3d 525, 538 (Tenn. 2006).

TN Farmers utilizes its brief on appeal to argue that it has a claim for breach of contract pursuant to a contract between TN Farmers and SDA. As discussed above,

however, the suit actually filed was not one for breach of a contract between TN Farmers and SDA. The Trial Court had before it a complaint for subrogation based upon an alleged contract between the Homeowners and SDA. As discussed above, however, there was no such contract, and TN Farmers had no right of subrogation as to an alleged contract between the Homeowners and SDA in any event. The Trial Court granted SDA summary judgment upon grounds, in part, other than those we find dispositive. However, "[I]f the Trial Judge reached the right result for the wrong reason, there is no reversible error." *Robinson v. Currey*, 153 S.W.3d 32, 40 (Tenn. Ct. App. 2004) (quoting *Shutt v. Blount*, 249 S.W.2d 904, 907 (Tenn. 1952)).

## <u>Conclusion</u>

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellant, Tennessee Farmers Mutual Insurance Company, and its surety.

_____
D. MICHAEL SWINEY, CHIEF JUDGE